[L. A. No. 48.   Department One.—March 23, 1896.]

## ANNIE L. SLOANE ET AL., RESPONDENTS, *v.* SOUTH-ERN CALIFORNIA RAILWAY COMPANY, APPELLANT.

RAILROADS—BREACH OF CONTRACT TO CARRY PASSENGER—ELECTION OF ACTIONS.—Where a railroad company breaks its contract to carry a passenger to the place of destination designated on the ticket, the passenger may either bring an action simply for breach of the contract, or may sue in tort in an action on the case for wrongful acts committed in violation of the contract, and in violation of defendant's duty as a common carrier, which it assumed upon entering into the contract.

ID.—DIFFERENT ACTS OF TORT BY DIFFERENT AGENTS.—For the purpose of the right of action for the tort of the railroad company, it is not material that different acts of tort were committed by different agents of the railroad company; and the liability of the railroad company is the same where one conductor took up the ticket of the passenger, and required a change of cars without giving to the passenger any evidence of the right of passage, and the conductor upon the other train excluded the passenger for failure to exhibit such evidence, as if both acts had been done by one conductor.

ID.—TAKING UP TICKET—DUTY OF RAILROAD COMPANY.—It is the duty of a railroad company to see that, in taking up the ticket of a passenger, the passenger is not thereby deprived of the right to a passage upon its cars.

ID.—INSTRUCTION—MEASURE OF CARE REQUIRED OF RAILROAD COMPANY TOWARD PASSENGERS.—It is proper to instruct the jury that the measure of care which a railroad company must exercise toward its passengers to see that they are provided with the means of continuing their journey is more than ordinary care; and it is not error to hold that this requires extreme care and diligence.

ID.—CONDUCT OF CONDUCTOR—HUMILIATION OF PASSENGERS — INDIGNITY —QUESTION FOR JURY.—It cannot be said, as matter of law, that the conduct of the conductor, in expelling a female passenger who had paid her fare, was not insulting or violent, or that she was not thereby subjected to humiliation and indignity, but the question is properly submitted to the jury under instructions from the court.

ID.—EVIDENCE—NERVOUS CONDITION OF PASSENGER—SHOCK TO NERVOUS SYSTEM FROM EXPULSION — INSTRUCTION — ELEMENT OF DAMAGE. — Where a female passenger is wrongfully expelled from the cars, evi-

dence is admissible to show her nervous condition, and that she was subject to insomnia and nervous shocks and paroxysms, if placed under great mental excitement, and that by reason of the excitement connected with the humiliation of her expulsion from the car, there had been a recurrence of insomnia and nervous paroxysms; and it is proper to instruct the jury that if they found that plaintiff was wrongfully expelled, under circumstances inflicting feelings of indignity and insult, they might consider the injured feelings of plaintiff, the indignity endured, her mental suffering, the humiliation and wounded pride which one in her condition of life and standing in the community would experience, together with any bodily harm or suffering occasioned; and to award such an amount of damages as will compensate her for such humiliation, suffering, and other detriment.

Id.—Mental Suffering—Aggravation of Damages.—Although mental suffering alone will not support an action for damages, yet it constitutes an aggravation of damages when it naturally ensues from the act complained of.

Id.—Injury to Nervous System—Physical Suffering.—A shock or injury to the nervous system occasioned by a tort must be regarded as a physical injury producing suffering to the body rather than to the mind, though the mind may be at the same time injuriously affected.

Id.—Character of Mental Excitement Immaterial— Cause of Nervous Injury—Question of Fact—Damages.—The character of the mental excitation by which the physical injury to the nervous system is produced is immaterial; and the act which caused the condition of mental excitation is the proximate cause of the injury, where it appears that the bodily harm is the direct result of the excited condition; and the question whether the indignity and humiliation suffered by the passenger from the act of expulsion caused the nervous paroxysm and subsequent injury to her health, is a question of fact to be determined by the jury, and, if satisfied that it was so caused, they are authorized to include in their verdict whatever damages she had thus sustained.

Id.—Knowledge of Defendant Immaterial—Unanticipated Result of Negligence— Natural Consequences.— It is immaterial whether the defendant or its agent knew of the susceptibility of the plaintiff to nervous disturbance, and it is not for the defendant to say that because it could not or did not in fact anticipate such a result of its negligent act, it must be exonerated from liability for such consequences as ensued; and it must be taken to know and contemplate all the natural and proximate consequences, not only that certainly would, but that probably might, flow from its wrongful act.

Id.—Prudence of Plaintiff—Walk from One Station to Another—Resulting Injury—Question for Jury.—Where the evidence shows that after plaintiff had paid for her ticket she had no funds left, and that when she was expelled from the car at one station, she attempted to walk back three miles to another station where her sister in law was residing, the court properly left it to the jury to determine whether she acted prudently in so doing; and if so that the injury sustained by her from such walk was a proper element of damage to be recovered; nor would the court be justified in directing the jury not to allow compen-

sation for any injury sustained by the walk, upon the ground that if she had waited a few hours she could have gone upon the cars.

ID.—PLEADING—ACTS CONSTITUTING WRONG—REFUSAL TO STRIKE OUT PROBATIVE FACTS—HARMLESS RULING.—The plaintiffs were justified in setting forth in their complaint the several acts of the defendant which constitute the wrong for which they sought redress; and any possible error in not striking out probative facts contained in the allegations thus made is a technical error, without prejudice to the defendant, and is not ground for reversal after the case has been tried upon its merits.

ID.—DEMURRER TO COMPLAINT—AMBIGUITY AND UNCERTAINTY — ELEMENTS OF DAMAGE—AMOUNTS NOT SPECIFIED.—The complaint of the plaintiff, setting forth a single ground of recovery for violation of defendant's obligation for through carriage of plaintiff to her destination, is not subject to a demurrer for ambiguity and uncertainty merely because the damages caused thereby consisted of various elements set forth in the complaint, without designating any amount of damage caused severally by the indignity suffered, or by the humiliation or injury to plaintiff's health, these elements of damage not being capable of computation, but the amount thereof is to be determined by the jury in the exercise of an intelligent discretion.

ID.—INSUFFICIENT DENIALS—WANT OF INFORMATION AND BELIEF—PRESUMPTIVE KNOWLEDGE OF CORPORATION.—Denials for want of information and belief are insufficient, and may be properly stricken from the answer, where the facts are presumptively within the knowledge of the defendant; and when the defendant is a corporation, it cannot place its denials upon such ground, if the matters denied are presumptively within the knowledge of any of its officers, even though the officer verifying the answer was himself without any information or belief upon the subject.

ID.—STRIKING OUT DENIALS—RULING WITHOUT PREJUDICE.— Where a ruling striking out some of the denials of an answer has been obviated by an amended pleading, and the defendant has not been precluded by the ruling from defending the action in any particular upon which it relied, the ruling is without prejudice, will be disregarded, and will not justify a reversal of the judgment.

ID.—EXCESSIVE DAMAGES—REMITTER OF EXCESS.—Where the circumstances do not call for exemplary damages, but only for a full and fair compensation for the injury, and the evidence and circumstances are such as to show that the jury must have been influenced by other considerations than the testimony before them in arriving at the amount of damages allowed by them, and that such amount is excessive, the judgment will be reversed unless the plaintiff shall remit the excess.

ID.—AMOUNT OF EXCESS.—The evidence considered, and a verdict for damages in the sum of fourteen hundred dollars for the wrongful expulsion of a female passenger held to be excessive to the extent of one thousand dollars.

APPEAL from a judgment of the Superior Court of Riverside County and from an order refusing a new trial. J. S. NOYES, Judge.

The facts are stated in the opinion of the court.

*William J. Hunsaker*, for Appellant.

The probative facts stated in the complaint should have been stricken out on motion. (Code Civ. Proc., secs. 426, 453; *Green* v. *Palmer*, 15 Cal. 412; 76 Am. Dec. 492; *Bowen* v. *Aubrey*, 22 Cal. 566; *Grewell* v. *Walden*, 23 Cal. 169; *Patterson* v. *Keystone Min. Co.*, 30 Cal. 364; *Larco* v. *Casaneuava*, 30 Cal. 565; *Willson* v. *Cleaveland*, 30 Cal. 200; *Coryell* v. *Cain*, 16 Cal. 567; Pomeroy's Remedies and Remedial Rights, secs. 519, 526, 552; Bliss on Code Pleading, secs. 149, 150.) The court erred in overruling defendant's demurrer to the complaint, for ambiguity and uncertainty. (*Lamb* v. *Harbaugh*, 105 Cal. 680; *Mallory* v. *Thomas*, 98 Cal. 645; *Grandona* v. *Lovdal*, 70 Cal. 161.) The court erred in striking out paragraphs I, II, and III of defendant's answer, the matters denied not being presumptively in the knowledge of the corporation or of the officer verifying the answer. (*Martin* v. *Erie Preservation Co.*, 55 Hun, 81; *Smith* v. *Janesville*, 26 Wis. 291; *Boorman* v. *American Express Co.*, 21 Wis. 154; *Oregonian Ry. Co.* v. *Oregon Ry. & Nav. Co.*, 22 Fed. Rep. 245; *Colorado Coal etc. Co.* v. *John* (Col. App.), 38 Pac. Rep. 399; *Bennett* v. *Leeds Mfg. Co.*, 110 N. Y. 150; *Martin* v. *Erie Preserving Co.*, 48 Hun, 81; *Maclay* v. *Sands*, 94 U. S. 586; *Hagman* v. *Williams*, 88 Cal. 146; *De Baker* v. *Southern Cal. Ry. Co.*, 106 Cal. 257; 46 Am. St. Rep. 237; *Buhne* v. *Corbett*, 43 Cal. 264; *Billings* v. *Drew*, 52 Cal. 565; *Botto* v. *Vandament*, 67 Cal. 332.) The court erred in admitting evidence as to physical suffering, and instructing the jury as to measure of damages. (*Gorman* v. *Southern Pac. Co.*, 97 Cal. 1; 33 Am. St. Rep. 157; 2 Rorer on Railroads, 865; Code Civ. Proc., secs. 2186–88; *Yorton* v. *Milwaukee etc. Ry. Co.*, 54 Wis. 234; 41 Am. Rep. 23; *Shelton* v. *Lake Shore etc. Ry. Co.*, 29 Ohio St. 214; *Crawford* v. *Cincinnati etc. Co.*, 26 Ohio St. 580; *Townsend* v. *New York etc. R. R. Co.*, 56 N. Y. 295; 15 Am. Rep. 419; *Frederick* v. *Marquette etc. R. R. Co.*, 37 Mich. 342; 26

Am. Rep. 531; *Cheney* v. *Baltimore etc. R. R. Co.*, 11 Met. 121; 45 Am. Dec. 190; *Jerome* v. *Smith*, 48 Vt. 230; 21 Am. Rep. 125; *Mosher* v. *St. Louis etc. R. R. Co.*, 127. U. S. 396; *Mahony* v. *Detroit etc. Ry. Co.*, 93 Mich. 612; 32 Am. St. Rep. 528; *Peabody* v. *Oregon etc. Co.*, 21 Or. 121; *Breen* v. *Texas etc. R. R. Co.*, 50 Tex. 43; *MacKay* v. *Ohio River Ry. Co.*, 34 W. Va. 65; 26. Am. St. Rep. 913; *Chicago etc. R. R. Co.* v. *Griffin*, 68 Ill. 504; *R. & N. W. Ry. Co.* v. *Bannerman*, 15 Ill. App. 100; *Pouilin* v. *Canadian Pac. Ry. Co.*, 52 Fed. Rep. 197; *Bradshaw* v. *South Boston R. R. Co.*, 135 Mass. 407; 46 Am. Rep. 481; *Hibbard* v. *New York etc. R. R. Co.*, 15 N. Y. 455, 470; *Western Ry. Co.* v. *Mutch*, 97 Ala. 194; 38 Am. St. Rep. 179; 16 Am. & Eng. Ency. of Law, 428, 429, 431, 437; Shearman and Redfield on Negligence, sec. 26; *Durgin* v. *Neal*, 82 Cal. 595; *Fairbanks* v. *Williams*, 58 Cal. 241, 242; 2 Greenleaf on Evidence, secs. 256, 268; *Anderson* v. *Taylor*, 56 Cal. 131; 38 Am. Rep. 52; *Chidester* v. *Consolidated Ditch Co.*, 53 Cal. 56, 57; *Johnson* v. *Wells, Fargo & Co.*, 6 Nev. 224; 3 Am. Rep. 245; *Scheffer* v. *Railroad Co.*, 105 U. S. 249; *Haile* v. *Texas etc. Ry. Co.*, 60 Fed. Rep. 557; *Hall* v. *Memphis etc. R. R. Co.*, 15 Fed. Rep. 57; *Morse* v. *Duncan*, 14 Fed. Rep. 396; *Salina* v. *Trosper*, 27 Kan. 544; *St. Louis etc. Ry. Co.* v. *Farr*, 56 Fed. Rep. 994.) As Mrs. Sloane's walk to Colton was unnecessary, the court erred in directing the jury to consider any suffering resulting therefrom. (*Texas etc. R. R. Co.* v. *Cole*, 66 Tex. 562; *Georgia etc. Co.* v. *Eskew*, 86 Ga. 641; 22 Am. St. Rep. 490; *Morse* v. *Duncan, supra; Francis* v. *St. Louis etc. Co.*, 5 Mo. App. 7; *Chicago etc. Ry. Co.* v. *Brisbane*, 24 Ill. App. 463.) The court erred in instructing the jury that the utmost care, diligence, and foresight of a very cautious person is the measure of care which a railroad company must exercise toward its passengers. (2 Shearman and Redfield on Negligence, 501; *Moreland* v. *Boston etc. R. R. Corp.*, 141 Mass. 31; *Palmer* v. *Pennsylvania Co.*, 111 N. Y. 488; *Kelly* v. *Manhattan Ry. Co.*, 112 N. Y. 443; *Morris* v. *New York etc. R. R. Co.*, 106 N. Y. 678; *Taylor* v. *Pennsylvania Co.*, 50 Fed. Rep. 755.)

The verdict is excessive and against law. (*Chicago etc. R. R. Co.* v. *Lyon*, 89 Ga. 16; 32 Am. St. Rep. 72; *Tarbell* v. *Central Pac. R. R. Co.*, 34 Cal. 616; *Atchison etc. R. R. Co.* v. *McGinnis*, 46 Kan. 109; *Quigley* v. *Central Pac. R. R. Co.*, 5 Saw. 107; *New York etc. Ry. Co.* v. *Bennett*, 50 Fed. Rep. 496; *Rose* v. *Wilmington etc. Co.*, 106 N. C. 168; *Cox* v. *Los Angeles etc. Ry. Co.*, 109 Cal. 100; *Cunningham* v. *Seattle etc. Power Co.*, 3 Wash. 472; *Quigley* v. *Central Pac. R. R. Co.*, *supra; Illinois etc. R. R. Co.* v. *Cunningham*, 67 Ill. 316; *Turner* v. *North Beach etc. R. R. Co.*, 34 Cal. 594; *Pleasants* v. *North Beach etc. R. R. Co.*, 34 Cal. 586; *Zion* v. *Southern Pac. Co.*, 67 Fed. Rep. 500; *Finch* v. *Northern Pac. R. R. Co.*, 47 Minn. 36; *Chicago etc. R. R. Co.* v. *Roberts*, 40 Ill. 503; *Pearson* v. *Duane*, 4 Wall. 605.)

*Works & Works*, and *Sweet, Sloane & Kirby*, for Respondents.

The court properly refused to strike from the complaint the allegation of wrongful taking of plaintiff's ticket by the first conductor, and the statement of plaintiff's explanation of the loss of her ticket to the second conductor. (*Peabody* v. *Oregon Ry. & Nav. Co.*, 21 Or. 121; *Pennsylvania R. R. Co.* v. *Connell*, 112 Ill. 295; 54 Am. Rep. 238; *Homiston* v. *Long Island R. R. Co.*, 22 N. Y. Supp. 738; *Hufford* v. *Grand Rapids etc. R. R. Co.*, 64 Mich. 631; 8 Am. St. Rep. 859; *Curl* v. *Chicago etc. Ry. Co.*, 63 Iowa, 417; Bliss on Code Pleading, 149; *Winchester* v. *Browne*, 7 N. Y. Supp. 550; Code Civ. Proc., sec. 475; *Jager* v. *California Bridge Co.*, 104 Cal. 542; *Gassen* v. *Lower*, 72 Cal. 555; *Reynolds* v. *Lincoln*, 71 Cal. 183.) The demurrer to the amended complaint was properly overruled. (*Hawthorne* v. *Siegel*, 88 Cal. 159; 22 Am. St. Rep. 291; 5 Am. & Eng. Ency. of Law, 52; 1 Sutherland on Damages, 770; *Shepard* v. *Pratt*, 16 Kan. 209; *Woodruff* v. *Cook*, 25 Barb. 505; *Treadwell* v. *Whittier*, 80 Cal. 574; 13 Am. St. Rep. 175.) Paragraphs I, II, and III of defendant's answer were properly stricken

out, as the matters therein denied were presumptively within defendant's knowledge. (Civ. Code, sec. 2332; *Donald* v. *Beals*, 57 Cal. 399; *Loveland* v. *Garner*, 74 Cal. 298; *San Francisco Gas Co.* v. *San Francisco*, 9 Cal. 453; *Brown* v. *Scott*, 25 Cal. 190.) · Although, as between the passenger and conductor, the ticket, or lack of it, is conclusive of the passenger's right to ride, and the conductor, acting in good faith, has a right to expel the passenger refusing to produce a ticket or pay fare, this immunity does not extend to the company. (*Yorton* v. *Milwaukee etc. Ry. Co.*, 54 Wis. 234; 41 Am. Rep. 23; *Townsend* v. *New York Cent. etc. R. R. Co.*, 56 N. Y. 295; 15 Am. Rep. 419; *Peabody* v. *Oregon Ry. & Nav. Co.*, *supra; Pennsylvania R. R. Co.* v. *Connell, supra; Homiston* v. *Long Island R. R. Co., supra; Sheldon* v. *Steamship Uncle Sam*, 18 Cal. 526; *Serwe* v. *Northern Pac. Ry. Co.*, 48 Minn. 78; *Head* v. *Georgia Pac. Ry. Co.*, 79 Ga. 358; 11 Am. St. Rep. 434; *Pouilin* v. *Canadian Pac. Ry. Co.*, 47 Fed. Rep. 858; *Willson* v. *Northern Pac. R. R. Co.*, 5 Wash. 621; *Commonwealth* v. *Power*, 41 Am. Dec. 475, note; *Muckle* v. *Rochester etc. Ry. Co.*, 79 Hun, 32; *Pittsburg etc. R. R. Co.* v. *Hennigh*, 39 Ind. 509; *Lake Erie etc. R. R. Co.* v. *Fix*, 88 Ind. 381; 45 Am. Rep. 464; *Murdock* v. *Boston etc. R. R. Co.*, 137 Mass. 293; 50 Am. Rep. 307; *Moore* v. *Fitchburg R. R. Co.*, 4 Gray, 465; 64 Am. Dec. 83; *Hufford* v. *Grand Rapids etc. R. R. Co.*, *supra.*) Recovery may include both direct and consequential damages. · (5 Am. & Eng. Ency. of Law, 6; 1 Sutherland on Damages, 21; Civ. Code, sec. 3333; 1 Am. & Eng. Ency. of Law, 9, 10; *Hawthorne* v. *Siegal, supra; Myers* v. *Malcom*, 6 Hill, 292; 41 Am. Dec. 744; *Topeka* v. *Tuttle*, 5 Kan. 312; *Krippner* v. *Biebl*, 28 Minn. 139; *Razzo* v. *Varni*, 81 Cal. 289; *Gorman* v. *Southern Pac. R. R. Co.*, 97 Cal. 2; 33 Am. St. Rep. 157; *Curtis* v. *Sioux City etc. Ry. Co.*, 87 Iowa, 622; *Muckle* v. *Rochester etc. R. R. Co., supra; Willson* v. *Northern Pac. R. R. Co., supra; Homiston* v. *Long Island R. R. Co., supra; Pennsylvania R. R. Co.* v. *Connell, supra; Lake Erie etc. R. R. Co.* v. *Fix, supra.*) Physical injury and suffering purely

the result of mental disturbance can be recovered for, if the mental distress was wrongfully inflicted. (*Canning* v. *Williamstown*, 1 Cush. 452; Lawson on Expert Evidence, 144; *Seger* v. *Barkhamsted*, 22 Conn. 298; Sutherland on Damages, 2d ed., secs. 21–3; 11 Sedgwick on Damages, 8th ed., secs. 860, 861; *Razzo* v. *Varni*, *supra;* *Mann Boudoir Car Co.* v. *Dupre*, 54 Fed. Rep. 646; *Barbee* v. *Reese*, 60 Miss. 906; *Oliver* v. *La Valle*, 36 Wis. 592; 2 Am. & Eng. Ency. of Law, 767.)  The ignorance of the company as to the susceptibility of plaintiff to nervous disturbance is immaterial. (*Mann Boudoir Car Co.* v. *Dupre, supra;* 11 Shearman and Redfield on Negligence, sec. 442; *Heney* v. *Dennis*, 47 Am. Rep. 381, note; *Ehrgott* v. *Mayor*, 96 N. Y. 264; 48 Am. Rep. 622; *Oliver* v. *La Valle, supra; Cincinnati etc. R. R. Co.* v. *Eaton*, 94 Ind. 474; 48 Am. Rep. 179.)  The prudence of Mrs. Sloane's walking to Colton was a question of fact which was properly submitted to the jury. (*Bland* v. *Southern Pac. R. R.*, 65 Cal. 626; *Chicago etc. R. R. Co.* v. *Flagg*, 43 Ill. 364; 92 Am. Dec. 133; *Cincinnati etc. R. R. Co.* v. *Eaton, supra.*)  There was no error in instructing the jury that defendant owed plaintiff " the utmost care, diligence, and foresight of a very cautious person." (*Jamison* v. *San Jose etc. R. R. Co.*, 55 Cal. 593; *Palmer* v. *Railroad Co.*, 3 S. C. 580; 16 Am. Rep. 755; *Georgia R. R. Co.* v. *Homer*, 73 Ga. 251; Rorer on Railroads, 951.) The verdict is not against law or excessive. (*Curtis* v. *Sioux City etc. R. R. Co., supra; Aldrich* v. *Palmer*, 24 Cal. 513; *Morgan* v. *Southern Pac. Co.*, 95 Cal. 508; *Lee* v. *Southern Pac. Co.*, 101 Cal. 120; *Gorman* v. *Southern Pac. R. R. Co., supra.*)

HARRISON, J.—The plaintiff, Annie L. Sloane, purchased a ticket April 8, 1894, from the agent of the defendant, at North Pomona, for passage from that place to San Diego, and on the same day took passage upon the regular passenger train of the defendant.  Before reaching San Bernardino the conductor of the train took up her ticket, without giving her any check or other

evidence of her right to be carried to San Diego, and on arriving at San Bernardino she was required to change cars, and enter another train of cars of the defendant. After entering this train, the conductor in charge thereof demanded of her her ticket, and upon her stating to him that she had given it to the conductor of the other train, and the circumstances therewith, she was informed by him that she must either pay her fare or leave the train. She had no money with her, and when the train reached East Riverside she left the car. After getting off the train she started to walk back as far as Colton upon the railroad track, a distance of about three miles, but after walking a portion of the way secured a seat in a passing vehicle, and was carried to Colton, where she spent the night with her sister in law. On the next day, having borrowed some money with which to purchase another ticket, she resumed her passage, and was carried to San Diego. The present action was brought to recover damages sustained by reason of the wrongful acts of the defendant's agents. The cause was tried by a jury, and a verdict rendered in favor of the plaintiffs for the sum of fourteen hundred dollars. From the judgment entered thereon, and an order denying a new trial, the defendant has appealed.

It is contended by the appellant that, as the plaintiff left the car at East Riverside, in accordance with the previous directions of the conductor, and no personal violence was used or displayed toward her, her only right of action is for a breach of the defendant's contract to carry her to San Diego, and that the extent of her recovery therefor is the price paid for the second ticket, and a reasonable compensation for the loss of time sustained by her. The plaintiff's right of action against the defendant is not, however, limited to the breach of its contract to carry her to San Diego, but includes full redress for the wrongs sustained by her by reason of the defendant's violation of the obligations which it assumed in entering into such contract. If she was wrongfully prevented by the defendant from

completing the passage to San Diego, for which it had contracted with her, she could either bring an action simply for the breach of this contract, or she could sue it in tort for its violation of the duty as common carrier, which it assumed upon entering into such contract. (*Jones* v. *Steamship Cortes*, 17 Cal. 487; 79 Am. Dec. 142; *Head* v. *Georgia etc. R. R. Co.*, 79 Ga. 358; 11 Am. St. Rep. 434; *Carsten* v. *Northern Pac. R. R. Co.*, 44 Minn. 454; 20 Am. St. Rep. 589.)   The complaint in the present case is not merely for the breach of the contract, nor is it merely for the wrong committed in excluding her from the car, but it is to recover the damages sustained by her by reason of the wrongful acts committed by the defendant in the violation of its contract.   It is in the nature of an action on the case, arising out of the conduct of the defendant in wrongfully depriving her of her ticket, and thereafter, by reason of such wrongful act, excluding her from its car, and refusing to carry out its contract. Although her action is for the tort resulting from the defendant's conduct, the wrong which produced that result was twofold—depriving her of the evidence of its contract to carry her to San Diego, and afterward excluding her from its car for failure to produce the evidence of which it had wrongfully deprived her.   For the purpose of giving her this right of action, it is immaterial that these different acts were by different agents of the defendant.   If the conductor who took up the ticket had himself, at a subsequent point in the trip, excluded her for failure to exhibit it, the liability of the defendant would not be questioned.   Its liability is the same, notwithstanding, for its own convenience, it has intrusted the management of its train to different conductors.   (*Muckle* v. *Rochester Ry. Co.*, 79 Hun, 32.)   The plaintiff was not called upon to question the right of the first conductor in taking up her ticket, and it was the duty of the defendant to see that she was not thereby deprived of her right to a passage upon its cars.

In her testimony regarding her exclusion from the cars the plaintiff recounted the interview between her

and the conductor, and the manner in which she was directed to leave the car, and it was claimed at the trial that she had been thereby subjected to humiliation and indignity for which she was entitled to redress. Counsel for the appellant does not question as a proposition of law that, if the conductor was insulting and violent in removing her, such treatment forms an element of damage to be recovered by her; but he maintains that the evidence fails to show such conduct. The evidence was, however, before the jury, and they were properly instructed in reference thereto; and, although it might be urged upon them that this evidence was insufficient to establish such conduct, we cannot say, as a matter of law, that it was not proper to submit the question to their judgment.

Evidence was given at the trial tending to show that Mrs. Sloane had been previously subject to insomnia, and also to nervous shocks and paroxysms, and that, owing to her physical condition, she was subject to a recurrence of these shocks or nervous disorder if placed under any great mental excitement, and that by reason of the excitement caused by her exclusion from the car there had been a recurrence of insomnia and of these paroxysms. The court instructed the jury that, if they found for the plaintiff, " in assessing damages, if it appears from the evidence that the plaintiff Annie L. Sloane was wrongfully deprived of her right to ride on defendant's cars, and expelled therefrom in a manner, and under circumstances, calculated to inflict, and which did inflict, feelings of indignity and insult, the jury is authorized to consider, under the evidence, the injured feelings of the plaintiff, the indignity endured, her mental suffering, the humiliation and wounded pride which one in her condition of life and standing in the community would experience, together with any bodily harm or suffering occasioned, and to award such an amount for damages as will compensate her for such humiliation, suffering, and other detriment." The jury were not specially instructed with reference to any

damages that might have been sustained by reason of the recurrence of this disturbance of the nervous system, but it is reasonable to suppose that the above evidence was offered by the plaintiffs for the purpose of recovering damages for the injury that might be thus established, and that under that portion of the above instruction in which the jury were authorized in assessing damages to consider "any bodily harm or suffering occasioned" by the expulsion of Mrs. Sloane from the cars, it was intended that they should consider this evidence, and the injury which it established. The defendant objected to the introduction of the evidence, and excepted to the instruction, and insists that under no circumstances could the jury consider this effect upon the plaintiff as an element of damage for which the defendant is liable; that the court should not have directed the jury to consider any mental suffering experienced by her.

Counsel for the appellant has discussed in his brief the want of liability on the part of the defendant for any damages for mental suffering, and has cited many authorities in support of the proposition that mere mental anxiety, unaccompanied with bodily injury or apprehended peril, does not afford a right of action. To the extent that the term "mental suffering" is included in the above instruction, this proposition is inapplicable. The term, as there used, is to be construed with reference to the context in which it occurs. The "mental suffering" there named is not the mental anguish or pain referred to in the above proposition cited by the appellant, but is the mental experience which is concomitant with the insult, indignity, and humiliation named in the instruction. It would be a contradiction of terms to hold that the individual whose pride had been humiliated, or whose dignity had been insulted, had no mental suffering in connection therewith, or that this humiliation and insult did not of themselves constitute mental suffering; that he could have redress for the injured pride, but not for the mental suffering

it produced.   Although mental suffering alone will not support an action, yet it constitutes an aggravation of damages when it naturally ensues from the act complained of.   (3 Sutherland on Damages, sec. 1245.)

The real question presented by the objections and exception of the appellant is, whether the subsequent nervous disturbance of the plaintiff was a suffering of the body or of the mind.   The interdependence of the mind and body is in many respects so close that it is impossible to distinguish their respective influence upon each other.   It must be conceded that a nervous shock or paroxysm, or a disturbance of the nervous system, is distinct from mental anguish, and falls within the physiological, rather than the psychological, branch of the human organism.   It is a matter of general knowledge that an attack of sudden fright or an exposure to imminent peril has produced in individuals a complete change in their nervous system, and rendered one who was physically strong and vigorous weak and timid. Such a result must be regarded as an injury to the body rather than to the mind, even though the mind be at the same time injuriously affected.   Whatever may be the influence by which the nervous system is affected, its action under that influence is entirely distinct from the mental process which is set in motion by the brain. The nerves and nerve centers of the body are a part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind.   If these nerves or the entire nervous system is thus affected, there is a physical injury thereby produced, and, if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect through some action upon the mind.

This subject received a very careful and elaborate consideration in the case of *Bell v. Great Northern Ry. Co.*, L. R. 26 Ir. 428.   Mrs. Bell was a passenger upon one of the defendant's trains, and by reason of the defendant's negligence in the management of its train

suffered great fright, in consequence of which her health was seriously impaired. She had previously been a strong, healthy woman, but it was shown that after this occurrence she suffered from fright and nervous shock, was troubled with insomnia, and that her health was seriously impaired. The jury were instructed that if, in their opinion, great fright was a reasonable and natural consequence of the circumstances in which the defendants, by their negligence, had placed her, and that she was actually put in fright by those circumstances, and if the injury to her health was, in their opinion, the reasonable and natural consequence of such great fright, and was actually occasioned thereby, the plaintiff was entitled to recover damages for such injury. It was objected to this instruction that unless the fright was accompanied by physical injury, even though there might be a nervous shock occasioned by the fright, such damages would be too remote. In holding that this objection was not well founded, and that the nervous shock was to be considered as a bodily injury, the court held that, if such bodily injury might be a natural consequence of fright, it was an element of damage for which a recovery might be had, and, referring to the contention of the defendant, said:

"It is admitted that as the negligence caused fright, if the fright contemporaneously caused physical injury, the damage would not be too remote. The distinction insisted upon is one of time only. The proposition is that, although if an act of negligence produces such an effect upon particular structures of the body as at the moment to afford palpable evidence of physical injury, the relation of proximate cause and effect exists between such negligence and the injury, yet such relation cannot in law exist in the case of a similar act producing upon the same structures an effect which, at a subsequent time—say a week, a fortnight, or a month —must result without any intervening cause in the same physical injury. As well might it be said that a death caused by poison is not to be attributed to the per-

son who administered it, because the mortal effect is not produced contemporaneously with its administration"; and at the close of his opinion Lord Chief Baron Palles says: "In conclusion, I am of the opinion that, as the relation between fright and injury to the nerve and brain structures of the body is a matter which depends entirely upon scientific and medical testimony, it is impossible for any court to lay down as a matter of law that if negligence cause fright, and such fright in its turn so affect such structures as to cause injury to health, such injury cannot be a consequence which, in the ordinary course of things, would flow from the negligence, unless such injury accompanied such negligence in point of time."

This case is quoted at great length and with approval in the eighth edition of Mr. Sedgwick's treatise on Damages, section 860. Mr. Beven, in the recent edition of his work on Negligence, volume 1, pages 77–81, also comments upon it with great approval. In *Purcell* v. *St. Paul City Ry. Co.*, 48 Minn. 134, the defendant so negligently managed one of its cars that a collision with an approaching cable car seemed imminent, and was so nearly caused that the attendant confusion of ringing alarm bells, and of passengers rushing out, produced in the plaintiff, who was a passenger on the car, a sudden fright which threw her into convulsions, and, she being then pregnant, caused in her a miscarriage and subsequent illness. The court held that the defendant's negligence was the proximate cause of the plaintiff's injury, and that it was liable therefor, even though the immediate result of the negligence was only fright, saying: "A mental shock or disturbance sometimes causes injury or illness of body, especially of the nervous system." (See, also, *Canning* v. *Williamstown*, 1 Cush. 451; *Seger* v. *Barkhampsted*, 22 Conn. 290; *Mann Boudoir Car Co.* v. *Dupre*, 54 Fed. Rep. 646; *Stutz* v. *Chicago etc. Ry. Co.*, 73 Wis. 147; 9 Am. St. Rep. 769; *Razzo* v. *Varni*, 81 Cal. 289.) "It is a physical injury to the person to be thrown out of a wagon, or to be compelled

to jump out, even though the harm done consists mainly of nervous shock." (*Warren* v. *Boston etc. R. R. Co.*, 163 Mass. 484.)

The mental condition which superinduced the bodily harm in the foregoing cases was fright, but the character of the mental excitation by which the injury to the body is produced is immaterial. If it can be established that the bodily harm is the direct result of the condition, without any intervening cause, it must be held that the act which caused the condition set in motion the agencies by which the injury was produced, and is the proximate cause of such injury. Whether the indignity and humiliation suffered by Mrs. Sloane caused the nervous paroxysm, and the injury to her health from which she subsequently suffered, was a question of fact to be determined by the jury. There was evidence before them tending to establish such fact, and if they were satisfied from that evidence that these results were directly traceable to that cause, and that her expulsion from the car had produced in her such a disturbance of her nervous system as resulted in these paroxysms, they were authorized to include in their verdict whatever damage she had thus sustained.

Whether the defendant or its agents knew of her susceptibility to nervous disturbance was immaterial. She had the same rights as any other person who might become a passenger on its road, and was entitled to as high degree of care on its part. It was not necessary that this injury should have been anticipated in order to entitle her to a recovery therefor. (Civ. Code, sec. 3333.) If the facts under which she was excluded from the car would be an act of negligence on the part of the defendant as to any and all persons, whoever might sustain injury by such act would be entitled to recover to the full extent of his injury, irrespective of his previous physical condition or susceptibility to harm. In *Baltimore City R. R. Co.* v. *Kemp*, 61 Md. 74, 619, 48 Am. Rep. 134, the plaintiff was injured upon a car of the defendant, and thereafter a cancer developed itself upon

her breast at the place where she had been hurt. Testimony was given to the effect that such hurt was sufficient to cause the development of the cancer, and that, in the opinion of the experts, they would attribute it to that cause. It was shown that previous to the accident she had been in apparently good health and condition. The court held that it was for the jury to determine from the evidence whether the cancer did result from the injury, and, if so, that the defendant was liable, even though it had no reason to anticipate such a result. "It is not for the defendants to say that, because they did not or could not in fact anticipate such a result of their negligent act, they must therefore be exonerated from liability for such consequences as ensued. They must be taken to know and to contemplate all the natural and proximate consequences, not only that certainly would, but that probably might, flow from their wrongful act." (See, also, *Fell* v. *Northern Pac. Ry. Co.*, 44 Fed. Rep. 253.)

The court properly left to the jury to determine whether Mrs. Sloane exercised reasonable prudence in undertaking the walk from East Riverside to Colton, and, if so, that the injury sustained by her was a proper element of damage to be recovered. It could not say as matter of law, or instruct the jury, that under the evidence before them such walk was or was not necessary, or whether the route selected by her was the most feasible; nor would it have been justified in directing them not to allow compensation for any injury sustained by the walk, upon the ground that if she had waited a few hours she could have gone upon the cars. (*Malone* v. *Pittsburg etc. R. R.*, 152 Pa. St. 390.)

The refusal of the court to strike out certain portions of the complaint as irrelevant is not a ground for reversal of the judgment. The matter embraced therein was relevant to the plaintiffs' right of recovery, and they were justified in setting forth in their complaint the several acts of the defendant which constituted the wrong for which they sought redress. The defendant

does not claim to have been prejudiced by any of the probative matters contained in these allegations, and, even if this matter might have been properly struck out by the court, after the cause has been tried upon its merits the judgment will not be reversed for such technical error.

The demurrer to the complaint was properly over-ruled. The cause of action set forth therein is neither ambiguous nor uncertain. It clearly states a single ground of recovery, viz., the unlawful violation by th defendant of the obligation it had assumed to carry Mrs. Sloane to San Diego; and although the damages cause to her by this violation of its obligation were made up of the injuries to her person, as well as the money paid by her as the consideration of this obligation, they all resulted from the wrong committed by the defendant. It was necessary that she should point out the particulars in which she had sustained injuries from the defendant—the humiliation, injuries to her health, etc.—in order that evidence thereof might be given at the trial, and also that the defendant might be prepared to meet such evidence; but it was not necessary that she should designate the particular amount of damage which she had sustained by reason of the indignity that she had been compelled to undergo, distinct from the amount sustained from the injury to her health. These elements of damage were not capable of computation, nor would evidence of such amount have been admissible. This amount was to be determined by the jury in the exercise of an intelligent discretion.

Neither does the action of the court in striking out a portion of the defendant's answer justify a reversal of the judgment. The denial of an allegation in the complaint for want of sufficient information and belief to enable the defendant to answer the same, justifies the court in disregarding or striking out such denial, if the matter is presumptively within the knowledge of the defendant; and although a corporation does not itself have any knowledge of the matters alleged, but is compelled

to act through its officers, whose information may be
derived from others, yet it cannot place its denials upon
its want of information and belief if the matters alleged
were presumptively within the knowledge of any of its
officers, even though the officer verifying the answer
was himself without any information or belief upon the
subject.

In the present case it moreover clearly appears that
the defendant was not prejudiced by the action of the
court.    In a separate defense to the action, the defend-
ant directly alleged many of the facts which, in the por-
tion of the answer thus struck out, it had denied for want
of information and belief, and although an admission
in one defense is not available as against a denial in
another, it is competent for the court to consider such
admission, for the purpose of determining whether the
answer containing the denial is sham or evasive.    After
the ruling of the court the defendant amended its an-
swer by directly denying the matters alleged in one of
the paragraphs which the court held had been insuffi-
ciently denied, and at the trial it stipulated to the
truth of the matters that had been denied by it in an-
other of the paragraphs which was stricken out.    The
defendant, was, therefore, not precluded from defending
the action in any particular upon which it relied.    After
a cause has been tried upon its merits, a ruling of the
court, either in striking out, or in refusing to strike out,
a portion of a pleading, will not justify a reversal of the
judgment, if it appears that the party against whom the
ruling was made has not been prejudiced thereby, and
has been able to present to the court his entire cause of
action or defense.    Mere technical error, unaccompanied
by injury, will be disregarded. · (Code Civ. Proc., sec.
475.)

The court did not err in its instructions to the jury
respecting the measure of care which a railroad com-
pany must exercise towards its passengers.    (Rorer on
Railroads, 951; *Georgia R. R.* v. *Homer*, 73 Ga. 251.)
The passenger is not required to question the action of

the conductor in taking up his ticket, but has to assume that his conduct in taking or withholding the ticket is in accordance with the rules of the company.   It is, there-fore, incumbent upon the conductor to exercise more than ordinary care in seeing that after he has taken the ticket from the passenger the latter shall be provided with the means of continuing his journey.   It is not error to hold that this requires extreme care and dili-gence.

We are of the opinion, however, that the damages al-lowed by the jury were excessive, and not justified by the evidence.   They were properly told that they could not award the plaintiff exemplary damages, but only such as would be a full and fair compensation to her for the injury and detriment she had suffered as the proxi-mate results of the defendant's wrongful acts.   The tes-timony tending to show that the conductor was rude and insulting in directing her to leave the train at East Riverside is quite meager, and consists more of her statement of its character than of the language used by him.   The jury were instructed that, in estimating the amount of damages she could recover by reason of the humiliation in being excluded from the car, they were not at liberty to consider her peculiar nervous tempera-ment, but to allow only such damages as would have resulted to a person of ordinary or usual temperament. So, too, the evidence concerning the effect of this expul-sion from the car upon her nervous condition consists more of general statements than of details, and it does not appear that this effect was of more than brief duration. She does not claim to have sustained any direct physi-cal injury by reason of the walk to Colton.   She testi-fies, as do also her husband and Dr. Averill, that, except for her nervous condition, she was in fair health, and that she was abundantly able to take a walk of two or three miles, and it is not suggested that the walk had any effect upon her nervous condition, or that she suf-fered any direct inconvenience therefrom after her return from San Diego.   The walk itself was not attended with

any unusual inconvenience. It was upon the railroad track, in a level country, on an afternoon in April. The distance is not given, but, after going about a mile or so, as far as the railroad bridge, she was taken into a passing vehicle and carried to Colton. While the amount of damages that may be awarded in a case like the present is in the discretion of the jury, it must be a reasonable, and not an unlimited, discretion, and must be exercised intelligently and in harmony with the testimony before them. We think that the jury in the present case must have been influenced by other considerations than the testimony before them in arriving at the amount of their verdict.

The judgment and order denying a new trial are reversed, unless the plaintiffs shall, within thirty days after the filing of the *remittitur* in the superior court, file with the clerk, and give to the defendant, a stipulation remitting from the judgment the sum of one thousand dollars. If such stipulation be so filed and delivered, the superior court is directed to amend the judgment in conformity therewith, and thereupon the judgment and order shall stand affirmed.

VAN FLEET, J., and GAROUTTE, J., concurred.

Hearing in Bank denied.