**PARAMOUNT PICTURES, Inc., et al. v. LEADER PRESS, Inc.**

No. 1944.

District Court, W. D. Oklahoma.

Oct. 7, 1938.

Keaton, Wells & Johnston, of Oklahoma City, Okl., for plaintiffs.

Embry, Johnson, Crowe & Tolbert, of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

The plaintiffs allege that the Paramount Pictures, Inc., a New York corporation, is engaged in the production of motion pictures and that its subsidiary and coplaintiff, Paramount Pictures Distributing Company, Inc., is engaged in the general distribution and sale of motion pictures produced by the parent company. That the defendant is a corporation doing business in the state of Oklahoma and engaged in the business of producing, printing, selling and distributing advertising accessories for use in advertising and exploiting motion pictures in motion picture theaters located in the state of Oklahoma and elsewhere, which advertising accessories consist of printed sheets or lithographs containing the names, drawings, cartoons and caricatures of prominent actors and actresses in the motion picture profession and the title of the motion picture in which the said actors and actresses are claimed to appear.

Plaintiffs further allege that Paramount Pictures, Inc., has for the past fifteen years or more produced each year not less than fifty feature motion pictures for distribution to motion picture theaters in the United States and the entire world, and not less than fifty feature motion pictures have been exhibited in each of said years in motion picture theaters in the United States and in the state of Oklahoma, and that it will in all probability continue its production at approximately the same rate in the future.

That the plaintiff, Paramount Pictures Distributing Company, Inc., is a wholly owned subsidiary corporation and was organized for the purpose of distributing motion pictures for exhibition in theaters in the United States and has been for many years regularly engaged in the business of distributing exclusively for plaintiff Paramount Pictures, Inc., its motion pictures for exhibition in motion picture theaters located in the state of Oklahoma and elsewhere, which pictures are known as "Paramount Pictures." That the feature motion pictures have been produced at great cost and plaintiffs further allege that said pictures have attained the highest standard of distinctive quality and exceptional merit and enjoy an extremely valuable reputation in the mind of the general public and that such pictures are identified in all advertising and publicity material prepared by plaintiffs and on the screen as "Paramount Pictures."

That the producing company employs well-known actors and outstanding personalities as stars and featured players to appear in its motion pictures and has many

contracts in force with said personalities for appearance and performance in motion pictures produced by or for it, and that said personalities so utilized by said plaintiff have attained outstanding prominence in the public mind.

The plaintiffs further allege that proper publicity and advertising is indispensable to the stars and featured players appearing and performing in the motion pictures as well as to the motion pictures themselves. The plaintiffs further recognize that because of the necessity for advertising said motion pictures in a manner in keeping with the outstanding quality of said pictures and the prominence of the personalities utilized in the production of said pictures, large sums of money are expended annually in advertising and publicizing nationally in newspapers, magazines and other periodicals, and over the radio its motion pictures, as well as the stars and featured players appearing therein. That they cause special advertisements to be prepared and written so as to attract the attention of the general public to the motion pictures and to the stars and the featured players appearing therein.

That the plaintiff Paramount Pictures, Inc., also employs a special staff of artists to prepare special drawings, pictures, photographs and to prepare special lithographs, posters, display signs, billboards, press sheets and various other advertising material and accessories which are produced at great cost to it and that said advertising accessories are of highly artistic merit and are produced by plaintiff Paramount Pictures, Inc., for the purpose of announcing to the public in the most favorable and most attractive manner the said motion pictures and the stars and featured players appearing therein.

That the said motion pictures produced by or for Paramount Pictures, Inc., are copyrighted under the copyright laws of the United States; that said motion pictures are licensed under copyright by plaintiff Paramount Pictures, Inc., or by plaintiff Paramount Pictures Distributing Company, Inc., for exhibition at motion picture theaters in the United States, including the state of Oklahoma, by written contract under and pursuant to which the licensee for a consideration is granted a limited license to exhibit the motion pictures for a number of days specified in said contract at a specified theater or theaters and upon completion of said exhibition the licensee is

required to return the print of said motion pictures to the plaintffs; that the title in said motion pictures vests at all times in Paramount Pictures, Inc., subject however to the right of the licensee to exhibit said motion pictures in accordance with the provisions of the written contract entered into between the plaintiffs and the licensee. The fee paid by a licensee to the plaintiffs is either a fixed sum or a sum equal to a stated percentage of the gross admission receipts of the licensee's theater and where the fee is a portion of the receipts received by the licensee for the exhibition of any of said pictures, the receipts are diminished by improper advertising, exploitation and publicity of the pictures and the stars and featured players who appear therein.

The plaintiffs further allege that the contract between plaintiffs and a licensee provides that the exhibitors in all advertising and exploitation of each of their motion pictures licensed to them shall advertise and announce each of said motion pictures as "A Paramount Picture" and shall otherwise adhere to the form of announcement contained in the advertising material used by the plaintiffs in respect of each of their motion pictures.

That the plaintiffs at great cost produce, manufacture and print a large supply of said advertising accessories so that these will at all times be available to the exhibitor for the purpose of advertising and exploiting the said motion pictures in conjunction with the exhibition of said motion pictures at the exhibitor's theater.

That the defendant, without the consent of the plaintiffs and without the consent of the actors and actresses employed by the plaintiffs, produces, manufactures, distributes and sells advertising accessories, purporting to relate to and advertise and exploit the motion pictures produced and distributed by the plaintiffs, which advertising accessories unfairly and improperly use the names of the actors and actresses employed by the plaintiffs and the titles of the motion pictures produced and distributed by plaintiffs.

That said advertising accessories so produced, manufactured, printed and distributed by the defendant do not contain the name of the plaintiffs or identify their motion pictures as "Paramount Pictures" and contain misleading and erroneous information and incorporate therein pictures, cartoons and caricatures of the stars and featured players employed by the plaintiffs in

a grotesque, inartistic and inferior manner and which do not afford to the said stars and featured players the advertising, publicity and exploitation credit which they would otherwise receive by the use of the advertising accessories produced and distributed by the plaintiffs, and that the reputation of the plaintiffs, and of the stars and featured players, is damaged by the use of said inferior advertising prepared and offered for sale by said defendant.

In their amendment to the bill of complaint, the plaintiffs refer to certain motion pictures, which have been advertised by the defendant. For instance, they allege that for the picture Cleopatra, the poster prepared by the defendant shows the head of Claudette Colbert, depicting her as a negress instead of a white woman and that the advertising matter omits the name of Joseph Schildkraut, which under contractual requirements plaintiffs are required to insert in all advertisements, and that the words, "A Paramount Picture," are omitted from the advertising.

Similar allegations are made with reference to some thirty other pictures and the general allegations are that in said advertisements the name, "A Paramount Picture," and the words, "Adolph Zukor Presents," are omitted; that the faces drawn on the posters are not true likenesses of the players; that the names of many of the players are not displayed in proper type; that the standing and reputation of the players require that their names be printed in larger type than the inferior players; that in some of the advertising matter the names of certain players appearing in the pictures are omitted entirely; that the names of the directors are omitted; and, that on the whole, the artistic work of the defendant in said advertising is of crude, inferior and cheap character.

The plaintiffs pray for injunctive relief against the defendant, an accounting of the profits, damages, costs and general relief.

The defendant has filed its motion to dismiss and alleges that the complaint fails to state facts sufficient to constitute a cause of action in favor of plaintiffs and against the defendant.

The parties have carefully briefed this case and the court has given the pleadings and briefs very careful consideration.

There is no question in the mind of the court but that the public recognizes that Paramount pictures are among the leading pictures in the motion picture business, which is now one of the largest business enterprises in this country. It must be observed, however, from the complaint that there is no contractual relation whatever between the plaintiffs and this defendant. That each is engaged in an independent business. One of the plaintiffs is engaged in the production of motion pictures and its subsidiary corporation and coplaintiff is engaged in the sale and distribution of the productions of the parent corporation, and since the distributing company is a wholly owned subsidiary of the parent corporation, in this opinion I shall make no distinction between the two as that is not material.

The sole purpose of plaintiffs, so far as the business element is concerned, is the sale or lease of the motion pictures. By that is meant either the exhibition of said motion pictures under a lease or license agreement or otherwise. Where the plaintiffs receive a stipulated sum for the use of their pictures by theaters, the advertising would be immaterial except for such advertising as the plaintiffs desired to make. Naturally, where the fee to be paid by the licensee for the use of a picture is a certain part of the proceeds received by a theater for the exhibition of any picture, the success of that exhibition would affect the amount received. The contracts between plaintiffs and the licensee are not set up in the complaint and are not material. But it appears to this court that if the plaintiffs desired to control the character of advertising used by the licensee, it could be done in the contract. But if the licensee is free to provide his own advertising matter, he may have the right to procure such advertising matter in such manner and from such sources as, in his judgment, will produce the best results in his community.

The business of the defendant is an independent business. It is engaged in the general printing of advertising matter as alleged in the complaint and the business of the defendant is just as important to it as the business of the plaintiffs is to them.

It is true that the complaint alleges that the plaintiffs have prepared advertising matter at a great cost and of a highly artistic nature and that they are desirous of having all theaters use their advertising matter. The complaint, however, is silent on the matter of the price of said advertising matter prepared by the plaintiffs as compared to the price charged by the defendant. It does emphasize, however, that the advertising matter prepared by the

plaintiffs is highly artistic and that the advertising matter prepared by the defendant is of a cheap, inferior grade.

It appears to the court that the owner of the theater would be as much interested in securing the best results from a show or exhibition in his theater as would the plaintiffs. It is not alleged that the defendant exhibits the advertising matter. It merely manufactures the character of advertising which the theater owner is willing to purchase and the theater owner is free to purchase this advertising matter from the defendant or not, as he chooses. He has an opportunity to purchase his advertising matter from the plaintiffs and the fact that he is as much interested in the financial results of the exhibitions of the pictures as the plaintiffs and that he chooses to purchase the advertising matter prepared by the defendant, would indicate that the theater owner is not of the same opinion as the plaintiffs as to the value of the advertising matter manufactured by the defendant.

There is no contention in the complaint that the advertising matter manufactured by the defendant infringes a copyright. The sole question is whether or not it constitutes such unfair competition as to justify the relief sought by the plaintiffs.

In their briefs, plaintiffs contend that the use of the names and pictures of these stars is an invasion of the stars' legally protected right of privacy.

There is little merit to this contention because common observation teaches us that the greatest asset to a star is constant publicity. But aside from that, the theater owner has as much right to publicize and advertise a picture, which he is exhibiting, as have the plaintiffs and his contract with the plaintiffs, under the allegations of this complaint, gives him the right to advertise the stars, the plot, and any other particulars which he desires. The fact that the names of some of the stars are not in as large letters as the plaintiffs like and that the printing of said names in the manner alleged interferes with the priority of importance and eminence of the stars, might affect the vanity of the stars and producers but would have little to do with the prominence which the public attaches to the various personalities. Neither the stars nor the plaintiffs are in a position to claim the right of privacy for the stars because their productions, faces and names are sold to the public.

In Melvin v. Reid et al., 112 Cal.App. 285, 297 P. 91, the California Appellate Court said [page 92]:.

"The right of privacy was unknown to the ancient common law.

" * 　 * 　 * 　 * 　 * 　 *

"It is a purely personal action, and does not survive, but dies with the person.

" * 　 * 　 * 　 * 　 * 　 *

"It does not exist where a person has become so prominent that by his very prominence he has dedicated his life to the public, and thereby waived his right to privacy. There can be no privacy in that which is already public."

In Jones v. Herald Post Co., 230 Ky. 227, 18 S.W.2d 972, the Supreme Court of Kentucky defines the right of privacy as follows [page 973]: "The right of privacy may be defined as the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity. In short, it is the right to be let alone. 21 R. C.L. 1197, 1198. There are times, however, when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place, he emerges from his seclusion, and it is not an invasion of his right of privacy to publish his photograph with an account of such occurrence."

In Corliss et al. v. E. W. Walker Co. et al., 64 F. 280, 31 L.R.A. 283, the Massachusetts Circuit Court said [page 282]: "But, while the right of a private individual to prohibit the reproduction of his picture or photograph should be recognized and enforced, this right may be surrendered or dedicated to the public by the act of the individual, just the same as a private manuscript, book, or painting becomes (when not protected by copyright) public property by the act of publication. The distinction in the case of a picture or photograph lies, it seems to me, between public and private characters. A private individual should be protected against the publication of any portraiture of himself, but where an individual becomes a public character the case is different. A statesman, author, artist, or inventor, who asks for and desires public recognition, may be said to have surrendered this right to the public. When any one obtains a picture or photograph of such a person, and there is no breach of contract or violation of confidence in the method by which it was obtained, he has the right to reproduce it, whether in a newspaper, magazine, or book. It would be ex-

tending this right of protection too far to say that the general public can be prohibited from knowing the personal appearance of great public characters. Such characters may be said, of their own volition, to have dedicated to the public the right of any fair portraiture of themselves."

The plaintiffs contend in their oral argument and in their briefs in effect that they have a right to dictate the form of advertising which is to be employed in exploiting the pictures made by them.

This is a matter that could be controlled easily by contract with the exhibitor but since the exhibitor has the right to purchase his advertising and since the defendant has the right to manufacture advertising as part of its legitimate business, is the character of the advertising to be manufactured by defendant and procured by the exhibitor to be limited by the dictation of the producer, the plaintiffs herein?

Many cases are cited in the briefs but the court does not regard them in point. The principal case relied upon by the plaintiffs, a case which has attracted much attention from the Bar and the Courts, is International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293. But this case certainly is not in point. None of the questions involved in that case are involved in the case at Bar. The substance of that case in brief is that the Associated Press gathers news throughout the world, that it has an expensive organization for that purpose and it sells the news to the various newspapers throughout the nation. The International News Service sought to utilize the production of the Associated Press' labors and broadcast this news over the radio. It was enjoined, and rightly so.

If the plaintiffs can regulate the character of advertising of an exhibitor, they could regulate the character of the theater in which he exhibits the picture, the character of the material that goes into the theater. Plaintiffs might contend that the appearance and construction of the theater was not in keeping with the prominence and importance of the stars in their employ.

It is common knowledge that advertising matter relating to moving pictures is of a somewhat elastic character, and resort to fertile imagination rather than to accurate reproductions of likeness, is most frequently the rule. The advertiser resorts to cartoons and original sketches, not to reflect upon the personalities depicted but to attract attention.

Many of the contentions made by the plaintiffs with respect to the criticisms of advertisements of certain pictures prepared by defendant are extremely trivial. The picture of "Cleopatra" is an example. The public had heard of Cleopatra long before this picture "Cleopatra" appeared. She was an important character in Roman and Egyptian history. Her family tree has long been in question as well as her personal appearance and her reputation for chastity, and it is by no means settled whether or not a true picture of Cleopatra should be depicted in a light or a dark complexion. It might be observed, however, that if Cleopatra were no more attractive or fascinating than she is made to appear in some historical sketches, the judgment, if not the sanity, of Caesar and Mark Anthony might be inquired into. The public is not so interested personally in Claudette Colbert, a person of great beauty and charm, as it is in Claudette Colbert, an actress attempting to impersonate Cleopatra. So there might be a difference of opinion as to the proper manner of advertising this particular picture.

Plaintiffs allege that the poster advertising "The Big Broadcast of 1937" includes the names of Randolph Scott and Jane Frohman, who did not appear in the picture, and misspells the name of Eleanore Whitney; that it omits the words, "Adolph Zukor Presents" and "A Paramount Picture"; that the first names of George Burns and Gracie Allen are omitted; that the last names of these performers are in smaller type than the names of Jack Benny and Bob Burns, whereas the plaintiffs are required to use the same size type for each of these performers; that in the plaintiffs' form of advertising, the title of the picture, "The Big Broadcast of 1937," should be what is known as "100%" and that the names of all performers should be in "50%" in comparative size; that the poster prepared by the defendant obviously is of inadequate artistry to be suitable for the advertising needs of the plaintiffs and therefore totally inferior.

The allegations in the complaint with reference to the advertising of other pictures, are substantially the same as that contained in the foregoing paragraph.

It is not necessary for the court to comment upon the seriousness of these complaints nor upon their merits, for the names

to be carried upon the advertising matter, while a matter of contract between the producer and the various personalities appearing in the pictures, are not a matter of contract between the producer and this defendant, as hereinbefore stated, and the plaintiffs have a remedy to control, absolutely, the character of advertising of their pictures by proper provisions in the contract with the exhibitor. The defendant exhibits no advertising but merely manufactures and prints advertising matter for sale to the exhibitor.

It appearing, therefore, that the defendant is engaged in an independent business; that it prepares its advertising matter in accordance with such information as is available to it; that there is no contractual relation of any character between the plaintiffs and the defendant, the acts of the defendant complained of by the plaintiffs do not constitute unfair competition and to sustain the contentions of the plaintiffs in this case would merely add the assistance of this court to the creation of a monopoly in the advertising of motion pictures. The acts of the defendant are legitimate, are not in violation of law, and are in keeping with the freedom ordinarily exercised by an independent advertiser.

The motion to dismiss is sustained. An exception is allowed the plaintiffs. A form of decree, consistent with this opinion, may be submitted.