[S. F. No. 16878. In Bank. June 30, 1943.]

LOS ANGELES WAREHOUSE COMPANY (a Corporation), Respondent, v. THE AMERICAN DISTILLING COMPANY (a Corporation), Appellant.

Norman A. Eisner for Appellant.

Sherman Anderson for Respondent.

SCHAUER, J.—This is an action by a bailee to recover from the bailor-owner moneys expended by the former in payment of an excise tax on the latter's property. The judgment in favor of the plaintiff-bailee must be sustained.

The property involved was 2092.5 gallons of gin; exclusive of the tax it was worth 28 cents per gallon. The tax was the United States Internal Revenue excise on distilled

spirits; it was imposed at the rate of $2.25 a gallon. Under the law (Int. Rev. Code, § 2800(a)(1) and (c), U.S.C.A., Title 26) such tax attached to the gin "as soon as this substance [came into] . . . existence as such." Obviously, therefore, the gin, as soon as it came into "existence as such," represented an invested value of $2.53 a gallon. (The possibility of abatement of the tax upon destruction of the gin under some circumstances need not be considered, as such contingency did not arise here.) Any owner of the gin necessarily had to consider its value as including the $2.25 a gallon tax inasmuch as such tax had to be paid.

Notwithstanding the fact that the tax attached to the gin simultaneously with its coming into existence, the actual payment of the tax could be deferred so long as the gin was kept in an internal revenue bonded warehouse (up to eight years). Defendant was the distiller and owner of the gin here involved; the tax on such gin had not been paid. Defendant was also the proprietor of a government bonded warehouse located in Sausalito, California.

Plaintiff was engaged in the business of conducting a similar government bonded warehouse, situated at Los Angeles, California, and as a part of its business on occasion caused distilled spirits to be transported in bond from bonded warehouses other than its own to its bonded warehouse at Los Angeles. Prior to October 11, 1938, defendant received from one of its customers a verbal purchase order for the gin here involved, together with directions that the gin be delivered to plaintiff's warehouse at Los Angeles for storage, title to pass after delivery in Los Angeles. On approximately October 11, 1938, defendant notified plaintiff of such order. In order to secure permission from the United States Internal Revenue Department to transport the gin from defendant's warehouse to that of plaintiff it was necessary for plaintiff to make application to the department, designating the carrier by which the gin was to be transported, and also to file a "Transportation and Warehousing Bond" to insure the payment of the tax on the gin. Plaintiff filed such bond with the department and designated the Evans Freight Lines, Inc., as the carrier. The gin was received by the designated carrier, but while it was in transit from the warehouse of defendant to that of plaintiff it was destroyed by fire, through no fault (so it was stipulated) of either plaintiff or defendant. The parties agree that ownership of the gin remained in de-

fendant at all times and "that under the laws of the United States of America distilled spirits being transported in bond from one bonded warehouse to another are deemed from the time the same leave the discharging warehouse to be in the custody of the receiving warehouse."

Thereafter, at defendant's request, plaintiff filed with the Internal Revenue Department a claim for remission of the tax on the gin. The claim was rejected, and on March 29, 1939, the Collector of Internal Revenue demanded of plaintiff the payment of the tax in the sum of $4,708.13. Plaintiff notified defendant by letter of the demand, and asked for defendant's check with which to make payment. Defendant did not furnish such check, but in a reply letter to plaintiff, dated April 3, 1939, the president of defendant distilling company stated, among other things: "I suggest you use every means possible to have the Department remit or cancel this charge, and after that is definitely settled and the money is paid then we can go further into the matter." On April 7, 1939, plaintiff filed with the Collector of Internal Revenue a written claim for abatement of the tax, and in connection therewith was required to post a bond, which it did at a premium expense of $105.93. In June, 1939, plaintiff filed a supplemental claim. Fees paid by plaintiff for an attorney's assistance in the matter amounted to $100.

In July, 1939, the claim was rejected, and in August, 1939, plaintiff paid the tax and accrued interest thereon, in the total sum of $4,809.21. Plaintiff promptly demanded reimbursement from defendant for the tax, the bond premium, and the attorney's fees. Defendant refused to pay and plaintiff brought suit, and recovered judgment for the total of the three sums. From such judgment defendant has appealed.

It seems scarcely more than a truism to observe that when property is destroyed without negligence or other fault of any person the loss falls upon the owner. Yet that simple fact, in the final analysis, determines this litigation.

Defendant contends that the Internal Revenue Code and regulations of the Department of Internal Revenue place primary (and inferentially ultimate) responsibility upon plaintiff for payment of the tax, and that to hold the distiller liable therefor would place upon the latter an impossibly burdensome contingent liability should gin distilled by it be destroyed after such gin had passed out of its con-

trol. It is not as the distiller, however, but rather as the *owner* of the gin that defendant here must reimburse plaintiff. The *owner* of the liquor lost it when it burned, and he must bear the loss of its total value, which, as we have seen, includes the tax which had attached. If title had passed from defendant company to its customer, then such loss, in the absence of some other controlling circumstance, would have been upon the customer rather than upon defendant. The rights of the respective parties, had the loss been occasioned through some fault of plaintiff, need not concern us here, inasmuch as the parties have stipulated that "the destruction and loss of said gin was in no manner caused or contributed to by the plaintiff or [the] defendant." ■ As stated in 4 California Jurisprudence 22, section 13, "If the subject of the bailment perishes or is lost, or is destroyed or damaged by accident, without any fault on the part of the bailee, the loss must fall on the bailor." (See *Hirshfield* v. *Central Pac. R. R. Co.* (1880), 56 Cal. 484, 485; *Rodgers* v. *Bachman* (1895), 109 Cal. 552, 557 [42 P. 448]; *Wolfe* v. *Willard H. George, Inc.* (1930), 110 Cal.App. 532, 535 [294 P. 436].)

■ The federal laws and regulations governing the imposition and collection of the tax do not determine the rights between the parties under the circumstances here depicted. The requirement that plaintiff furnish a transportation bond and the fact that the federal government looked primarily to plaintiff and only secondarily to defendant for payment of the tax are wholly immaterial in this case, to which the government is not a party and which involves no question of primary liability to the government but only that of ultimate liability as between a bailor and a bailee. The law and regulations imposing a primary and direct liability on the bailee-warehouse in favor of the government and requiring a bond from it constitute merely a scheme of procedure adopted by the government for the convenient and certain collection of the tax by it and for the accommodation and convenience of the distiller and subsequent owners in the free transfer of title to the liquor while it remains in bond, up to a period of eight years, without the actual advancement of the money for the tax. Such procedure helps the manufacturer and subsequent purchasers in that it brings the payment of the tax closer to the consumer who ultimately, in effect, pays it; i. e., the tax does not have to be paid to the

government until the liquor is removed from the bonded warehouse presumably for distribution through retailers to the consumers, provided such removal is delayed not longer than eight years. Such procedure obviously does not purport to fix ultimate responsibility for the tax upon a bailee-warehouse in respect to its relationship with a bailor-owner. Liability of the distiller of the liquor, or of its bailee, to the government for payment of the tax is essentially different from responsibility for loss of the property (including ultimate responsibility for the tax) as among parties dealing with the liquor. Inherently the tax is imposed on the *goods,* not on the manufacturer or the bailee or any subsequent owner or consumer. So far as persons dealing with the liquor are concerned *the tax follows the property as a necessarily included part of the value thereof* and, hence its actual payment being merely deferred, it becomes an obligation of the owner, as an incident of ownership, payable on removal from bond.

 The gin was in the constructive custody of plaintiff as the receiving warehouse at the time it was destroyed, and such destruction was tantamount to removal from bond. Under the terms of its transportation bond plaintiff thereupon became liable to the United States Government for the immediate payment of the tax, and, at the demand of the Collector of Internal Revenue, advanced such tax. Plaintiff also advanced the money to pay the obligations it incurred for bond premium and attorney's fees in seeking abatement of the tax pursuant to defendant's request. Under the provisions of section 27 of the Warehouse Receipts Act (Stats. 1909, p. 437; 2 Deering's Gen. Laws, 1937, Act 9059, p. 4218) a warehouse is given a lien for "all lawful claims for money advanced . . . in relation to . . ." goods in its custody. It is also provided, in section 1856 of the Civil Code, that "A depositary for hire has a lien for . . . advances . . . incurred at the request of the bailor." For the tax, the bond premium, and the attorney's fees advanced, plaintiff warehouse is entitled to recover from the owner of the goods.

The judgment is affirmed.

Shenk, J., Curtis, J., and Carter, J., concurred.

TRAYNOR, J.—I concur in the result reached in the majority opinion but do not agree that the federal excise tax

on distilled spirits is a property tax, that the tax follows the property "as a necessarily included part of the value thereof," or that it "becomes an obligation of the owner, as an incident of ownership." To employ property law concepts in the solution of problems like the present one can lead only to confusion.

The issue turns not upon who had title to the liquor that was destroyed, but upon whose tax liability was discharged by plaintiff when it paid the tax after the destruction of the liquor. Defendant contends that plaintiff paid its own debt, on the ground that the liquor was being transported under the plaintiff's bond at the time it was lost. Plaintiff contends that it paid defendant's debt, and that the provisions requiring it to post a bond guaranteeing the payment of the tax in the event the liquor was withdrawn from bond are designed, not to impose a new or substituted tax, but merely to insure collection of a tax already imposed. The determination of this issue rests upon the proper interpretation of the federal statutes and regulations with respect to the federal excise tax on distilled spirits.

Section 2800 (a) (1) of the Internal Revenue Code provided, at the time here pertinent: "There shall be levied and collected on all distilled spirits (except brandy) in bond or produced in or imported into the United States an internal revenue tax at the rate of $2.25 (and on brandy at the rate of $2.00) on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond." Section 2800 (c) provided: "The tax shall attach to distilled spirits . . . as soon as this substance is in existence as such. . . ." Section 2800 (d) provided: "Every proprietor or possessor of, and every person in any manner interested in the use of, any still, distillery, or distilling apparatus, shall be jointly and severally liable for the taxes imposed by law on the distilled spirits produced therefrom."

These provisions impose an excise tax on distilled spirits measured by the quantity distilled. (*United States* v. *Singer*, 82 U.S. (11 Wall.) 111, 121 [21 L.Ed. 49]; see *Patton* v. *Brady*, 184 U.S. 608 [22 S.Ct. 493, 46 L.Ed. 713].) Liability for the tax rests upon the distiller as soon as the liquor is in existence and until the tax is paid. If the tax were a property tax it would have to be apportioned among the states according to population. (U. S. Const., art. 1, sec. 2; see *Bromley* v.

*McCaughn,* 280 U.S. 124 [50 S.Ct. 46, 74 L.Ed. 226] ; *Pollock* v. *Farmer's Loan & Trust Co.,* 157 U.S. 429 [15 S.Ct. 673, 39 L.Ed. 759].)

Recognizing that liquor is frequently held several years before sale or resale, Congress provided for the postponement of the payment of the tax, not to exceed eight years, under conditions insuring payment. Thus section 2879 (b) of the Internal Revenue Code provides: "The tax on all distilled spirits hereafter entered for deposit in internal revenue bonded warehouses shall be due and payable before and at the time the same are withdrawn therefrom and within eight years from the date of the original entry for deposit therein; and warehousing bonds hereafter taken under the provisions of the internal revenue laws shall be conditioned for the payment of the tax on the spirits as specified in the entry before withdrawal from the internal revenue bonded warehouse, and within eight years from the date of said entry." Subdivision (c) of section 2879 provides: "The Commissioner shall prescribe the form and penal sums of bonds covering distilled spirits in internal revenue bonded warehouses and in transit to and between such warehouses; *Provided,* That the penal sums of such bonds covering distilled spirits shall not exceed in the aggregate $200,000 for each such warehouse." Pursuant to this provision the commissioner required each receiving warehouse to post a bond to insure payment of the tax when liquor was in transit to or in possession of the receiving warehouse. The bond posted by plaintiff expressly guaranteed payment of the tax by plaintiff in the event the liquor was destroyed while in transit to plaintiff.

While plaintiff's obligation was ancillary to and by way of security for the payment of the distiller's obligation, it did not supersede that obligation. Plaintiff discharged the tax liability that rested upon defendant until the tax was paid, and may recover from defendant under the established principle that "A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." (Restatement: Restitution, sec. 76, p. 331; see cases cited in 17 Cal. Jur. 587 et seq.; see, also, *Brooks Wharf and Bull's Wharf Co., Ltd.* v. *Goodman Bros.,* (1937) 1 K.B. 534.)

Gibson, C. J., and Edmonds, J., concurred.