## RACHEL GALUSCA *v.* EVA P. DODD

[No. 79, October Term, 1947.]

*Decided February 18, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Maurice Braverman* for the appellant.

*Paul L. Cordish* for the appellee.

DELPLAINE, J., delivered the opinion of the Court.

Mrs. Eva P. Dodd, a nurse employed by the Aler family in an apartment house at 2032 Park Avenue in Baltimore, entered this suit to recover damages for personal injuries which she sustained as the result of an assault and battery committed upon her by Mrs. Rachel Galusca, owner of the building. The Alers lived on the first floor, while Mrs. Galusca lived on the second floor.

On July 17, 1946, about 9:30 a. m., Mrs. Galusca knocked on the door of the Alers' apartment; and the nurse, instead of inviting her in, told her that she was busy. Mrs. Galusca, however, stuck her foot in the doorway, and tried to enter by force. The nurse asked her to remove her foot, and Mrs. Galusca thereupon struck her on the face with her fist. The blow landed near the nurse's left eye, broke her eyeglasses, and cut her eyelid, causing it to bleed profusely. She called for the police, and about a half hour later, upon the arrival of two police officers, she charged Mrs. Galusca with disturbance of the peace and assault and battery. The officers arrested the assailant and took her to the Northern Police Station.

At the close of the trial in the Court below, the judge instructed the jury that they could award plaintiff, in addition to compensatory damages, such punitive damages as they might find proper, if they found that the assault was malicious or unprovoked and excessive. The jury awarded plaintiff a verdict for the sum of $1,000. This appeal is from the judgment entered upon that verdict.

Defendant objects to the testimony of the policemen concerning plaintiff's physical condition shortly after she had been assaulted. We recognize that ordinarily a medical expert is the only witness qualified to give the diagnosis of a physical ailment, to describe its proper

treatment, and to express an opinion as to its probable consequences. Nevertheless, an ordinary observer, who is not a physician, may testify concerning another's physical appearance. *Baltimore & Liberty Turnpike Co. v. Cassell,* 66 Md. 419, 432, 7 A. 805, 59 Am. Rep. 175. In fact, any nonexpert may testify to facts coming under his observation, even though the facts are such as are provable ordinarily by experts. In the case at bar the police officers were competent to testify that they saw blood on plaintiff's face, that her eyeglasses were broken, and that she was in a very nervous condition, for such observations do not require medical training.

Defendant also contends that the trial judge should not have admitted the evidence of her arrest. This Court has formulated the rule that, in the trial of a suit for damages for assault, evidence that the defendant has been tried and convicted for the assault in a criminal prosecution is inadmissible in chief for the purpose of proving the fact that the assault was committed, but such evidence may be admitted on cross-examination of the defendant. *Baltimore & Ohio R. Co. v. Strube,* 111 Md. 119, 125, 126, 73 A. 697; *Pugaczewska v. Maszko,* 163 Md. 355, 163 A. 205. In the case at bar the judge admitted evidence to show that defendant had been arrested on the criminal charges, but excluded evidence to show that there was a trial and conviction. The evidence which was admitted was not prejudicial to defendant, even if irrelevant. We find no reversible error in the admission of this evidence or in allowing an officer to testify that plaintiff's charges against defendant were entered on the docket at the Northern Police Station.

Defendant further objects to the testimony of Rev. Lloyd G. Ice, plaintiff's son-in-law, who is the pastor of the Presbyterian Church at Govans. It is urged that his testimony is irrelevant because he did not see her until three days after the assault. We also find that this objection is without merit. When Rev. Mr. Ice was questioned on the stand concerning her condition, he stated from his own observation that she was ordinarily

"a very composed individual and not too easily upset," but when he saw her three days after the assault, she was "very nervous and jittery." We think the trial judge ruled correctly in allowing the witness to show the difference between the plaintiff's normal condition prior to the assault and her appearance subsequent to the assault. In *West Chicago Street R. Co. v. Kennedy-Cahill,* 165 Ill. 496, 46 N. E. 368, 369, which was an action in tort to recover for personal injuries sustained in a railroad accident, where it was shown that the plaintiff had been confined to bed for several weeks following the accident as a result of her injuries, and later entered a hospital to be treated for an ailment claimed to be the result of the injuries, the Supreme Court of Illinois said: "It was a question for the jury whether the subsequent sickness was caused by that injury, or resulted from other causes, and we are unable to see why her appearance before and after the injury was not relevant to that issue, to be given such weight as the jury might think it entitled to."

The principal contention of defendant on this appeal is that it was prejudicial error to admit testimony of her malice toward members of the Aler family. There is no question of the general rule applicable to all suits for personal injuries that if the injuries have been inflicted maliciously or wantonly, the jury are not restricted to actual or compensatory damages, but may give in addition thereto such punitive or exemplary damages as the circumstances of the case will warrant. *Sloan v. Edwards,* 61 Md. 89; *Baltimore Transit Co. v. Faulkner,* 179 Md. 598, 601, 20 A. 2d 485; *Heinze v. Murphy,* 180 Md. 423, 430, 24 A. 2d 917. But defendant earnestly contends that plaintiff failed to exhibit any malice toward plaintiff individually, and that evidence of malice toward the Alers was irrelevant, inasmuch as plaintiff was not a member of the Aler family, but only their employee. In order to be entitled to puntiive damages for a malicious assault, it is not necessary to prove any specific grudge against the party assaulted. The malice

of the defendant may be directed against a group or class of which the plaintiff is a member. *Farwell v. Warren,* 51 Ill. 467; 16 *A. L. R.* 810. In the instant case it appeared that there had long been a bitter feeling between defendant and the Alers, by whom the plaintiff was employed. Defendant, as the owner of the apartment building, had attempted to raise the rent of the tenants of the first-floor apartment, and had actually filed legal proceedings with the object of evicting them from their apartment. Defendant had expressed deep disapproval of Federal regulations for rent control. It can readily be understood how a nurse, living in intimate relationship with the family for whom she is working, shares the target for malice directed against the family. Plaintiff had been employed by James and Mildred Aler to nurse their mother since March, 1946. The aged patient required constant attention, and consequently the nurse was an essential part of the household. There can be no doubt that plaintiff, during the four months she was employed by the Alers, became fully aware of the bitterness that existed between defendant and her employers. She testified that defendant had taken a hostile attitude toward the whole family, and had included her "in a general way" with the family. She further testified that defendant had done many "little irritating things" with the object of making life unpleasant for them all. As defendant's malice was directed against the Aler household, rather than any particular person, evidence of that malice was clearly admissible.

As defendant's only objections were to the rulings on the evidence, and we have found no reversible error in these rulings, the judgment in favor of plaintiff will be affirmed.

*Judgment affirmed, with costs.*