[Civ. No. 4014.   Fourth Dist.   Mar. 29, 1950.]

ROBERT MODLIN, Appellant, v. WALTER'S FUR SHOP
et al., Respondents.

Jacobs, Blanckenburg & May for Appellant.

Clyde E. Cate for Respondents.

GRIFFIN, J.—Plaintiff appeals from an adverse judgment rendered in an action brought by him against defendants to recover for the loss of a mink coat delivered to defendants under a written consignment.

The material facts are undisputed. Plaintiff and one Giacomini each operated a wholesale furrier business in San Francisco at the same location. Plaintiff sold the higher priced

furs and Giacomini those in a lower bracket. Giacomini traveled over the state in making sales for himself as well as for plaintiff. There is no question that he had unlimited authority to act as agent for the plaintiff. Walter G. Kurkjian called at plaintiff's place of business and requested that the particular mink coat here involved be sent to Fresno, at defendants' place of business, for the purpose of showing it to a prospective customer. In his travels, Giacomini brought it with him, together with many other furs owned by him or by other furriers for which he made sales on commission.

The defendants admittedly received and accepted the furs and coat. One of the defendant partners, Walter G. Kurkjian, signed his initials on the original statement of consignment upon which the several furs were listed, including the coat here involved. A carbon copy of the original was made and left with defendants. Both the original and carbon copy contained the printed notation thereon: ''The articles mentioned above are sent to you for inspection for 24 hours only with the distinct understanding that they remain the property of the manufacturer until bill of sale is rendered by the consignor. Consignee shall be responsible for any loss from fire or theft or negligence. This merchandise is to be returned upon demand.'' On the duplicate statement was printed the name ''Jac-A-Me Furs—Wholesale—G. Giacomini—Consigned to *Walter's Fur Shop* . . . *Fresno* . . . Terms: *net* . . . No. . . . Description . . . Price.'' Then follow the numbers given to other furs. No number is inserted for the ''*(1) Nat. Wild Mink Coat*,'' priced at $3,250. (Italics indicate handwritten portion of statement.) The original contains the name ''Robert Modlin &'' over the printed words ''Jac-A-Me Furs'' and the same name is stamped opposite that designation. An additional telephone number is written on the original and the word ''Memo'' follows the word ''net.'' The number ''R-298'' is inserted in the space provided on the original designation for the number of the mink coat. It was explained and understood by all of the parties that the prefix ''*R*'' in front of the figures ''298'' indicated that it was a product of Robert Modlin. Defendants concede that they had been doing business with both Modlin and Giacomini prior to this time. The evidence is that the coat was stolen by a ''shoplifter'' from defendants' store. Defendants immediately phoned to plaintiff Modlin notifying him that the coat had been stolen and asked him to so inform Giacomini. Thereafter, through an

736

attorney, plaintiff demanded from defendants $3,250 for the loss of the coat. Giacomini refused to join with plaintiff in instituting this action because of his friendship toward defendants. He was then made a party defendant.

On this evidence the trial court found that no act of negligence was chargeable against the defendants, which fact is conceded by plaintiff. It then found that defendants had no dealings concerning the mink coat with plaintiff Robert Modlin, and rendered judgment in favor of defendants. Giacomini, at the trial, corroborated Modlin's testimony in respect to his agency and the manner in which he delivered the coat to defendants; that he had no interest in the coat; and did not remember whether he told defendants at the time that it belonged to Modlin. He did testify, however, that he had handled Modlin's merchandise in connection with his business in consigning furs to the defendants a number of times prior to this occasion; that this same coat had been consigned to defendants on a prior occasion and returned by them; that defendant Walter G. Kurkjian called on the telephone and wanted it returned to show it to a customer. He accounted for the changes between the original and duplicate in the consignment agreement as follows: that these consignment receipts came in pads of 50 sheets with carbon between two sheets; that he probably neglected to list the number of this particular fur coat because it was not then available and it was inserted later by him on the original; that as to the printed name ''Robert Modlin'' they had an office boy who usually stamped five or six books ahead and it was probably an oversight on his part in missing this particular duplicate. Modlin testified that Giacomini had many of these books printed and on hand and that it was his custom to use them in his business, too.

The only argument presented by defendants is that the original consignment statement was so altered and so materially changed that their liability thereunder was discharged; that although they may have been liable to Giacomini thereunder, that liability did not extend to plaintiff Modlin, citing Brannan's Negotiable Instruments Law, sixth edition, page 1059; and Lawyer's Report Annotated 1918-F, pages 696, 698. Counsel for plaintiff sought an additional finding by the court that Giacomini acted as agent for plaintiff in the transaction, which request was refused.

The undisputed evidence shows that there was either an ostensible or undisclosed agency existing between plaintiff

and Giacomini, and that plaintiff was the owner of the coat.

This case came before the appellate court before on another question. (*Modlin* v. *Walter's Fur Shop,* 83 Cal.App.2d 384 [188 P.2d 805].) There it was held that although an agent does not disclose to third parties his status as agent, but the agency actually exists, the principal, without inclusion of the agent as a necessary party, may maintain an action in his own name against such third parties. ▮ It is the general rule that if the subject of the bailment perishes, or is lost, destroyed or damaged by accident, without any fault on the part of the bailee, the loss must fall on the bailor unless by special contract the bailee has made his liability absolute, in which case he will be held accountable. (*Los Angeles Warehouse Co.* v. *American Distilling Co.,* 22 Cal.2d 402 [139 P.2d 641]; 4 Cal.Jur. § 13, p. 22.) ▮ In the instant case we find a direct agreement on the part of defendants to be responsible to the consignor for any loss from theft. The only possible uncertainty created by the claimed changes or alterations does not affect defendants' liability, but only creates some uncertainty as to whom they should pay for that loss. Giacomini was made a party defendant for the purposes stated. His position was that of a party plaintiff. (*Modlin* v. *Walter's Fur Shop, supra,* p. 389.) He answered and claimed that he was not liable and that he was acting as agent for Modlin. The trial court gave judgment in his favor and, by inference, held that Giacomini was not entitled to the reimbursement.

In 1 California Jurisprudence, section 131, page 854, it is stated that "Although it was held in an early California case that an undisclosed principal cannot sue the third person on a contract made by his agent since there is no privity of contract between them, this doctrine now seems to have been abandoned in favor of the more liberal view that the principal may hold the third party." (Citing cases.)

The evidence conclusively shows that there is no evidentiary support for the finding and judgment relieving defendants of liability to plaintiff under the agreement.

Judgment reversed and the trial court is directed to enter judgment against defendants (respondents herein) as prayed for in the complaint.

Barnard, P. J., and Mussell, J., concurred.