**Arlena BENNETT, Appellant**

v.

**CITY NATIONAL BANK AND TRUST COMPANY, Norman, Oklahoma, a National Banking Corporation, and Larry Shaver, Appellees.**

**No. 47924.**

Court of Appeals of Oklahoma, Division No. 1.

Dec. 16, 1975.

Rehearing Denied Jan. 20, 1976.

Certiorari Denied April 20, 1976.

Released for Publication by Order of Court of Appeals April 21, 1976.

**394**

Terry Shipley, Oklahoma City, for appellant.

Sam F. Whitlock, Norman, for appellees.

BOX, Judge:

An appeal by Arlena Bennett, plaintiff from the sustaining of a demurrer to her evidence, in a suit against City National Bank and Trust Company, Norman, Oklahoma, and Larry Shaver, for mental anguish and severe emotional distress, arising out of certain acts of defendant Larry Shaver, in making threatening and abusive telephone calls to plaintiff.

Plaintiff filed her petition against the defendants, alleging in part as follows:

"3. Steven Bennett, the son of Plaintiff, Arlena Bennett, owed a sum of money to City National Bank and Trust Company in June of 1973, which Steven Bennett had borrowed from City National Bank and Trust Company on an installment basis. Steven Bennett allegedly was past due in his payments during the summer of 1973. Defendant Larry Shaver, an agent and vice-president of Defendant City National Bank and Trust Company on numerous occasions throughout the summer of 1973 and continuing into the fall of that same year, made calls to the residence of Plaintiff. Such calls were made to inquire into the whereabouts and financial status of Steven Bennett. During this time Plaintiff was generally cooperative with Defendant Larry Shaver and supplied any information she possessed concerning Steven Bennett and Plaintiff in fact, using money supplied by Steven Bennett and at his request, made payments to Defendant City National Bank and Trust Company on the note of Steven Bennett.

"4. On or about October 9, 1973, Defendant Larry Shaver called the residence of Plaintiff and made further inquiries concerning the whereabouts of Steven Bennett and sought additional information which would assist Defendant Larry Shaver in locating Steven Bennett. Plaintiff refused to supply such information. Defendant Larry Shaver became irate and abusive in his language toward Plaintiff and threatened to ruin the credit of Plaintiff and her husband, Ralph Bennett. Defendant Larry Shaver stated further abusive and threatening language, to-wit: 'Mrs. Bennett, you have a poor attitude, the poorest attitude I have ever seen. I take it you don't intend to help the bank? Well, Mrs. Bennett, I'll do everything I can to make you sorry you took this course of action. When I get through with you, you will look back in time and remember this day. I'll do everything in my power to make your life miserable and make you pay for this.' Defendant Larry Shaver also made various other threats that he would do everything in his power to upset the lives of Plaintiff and her husband and to destroy their peace of mind and credit.

"5. The above threats and abusive language were communicated to Plaintiff by Defendant Larry Shaver acting as an agent of Defendant City National Bank and Trust Company, knowing that the party to whom he was talking was Plaintiff. Such threats and abusive language were intended by Defendant Larry Shaver and Defendant City National Bank and Trust Company to cause great mental anguish and severe emotional distress to Plaintiff, or were made in reckless disregard for the rights of Plaintiff. Defendant Larry Shaver and Defendant City National Bank and Trust Company should have known and recognized that the use of such threats and abusive language and the communication of such would cause great mental anguish and severe emotional distress to Plaintiff."

Plaintiff sought actual damages in the amount of $10,000.00 and punitive damages in the amount of $50,000.00.

Defendants answered, generally denying and specifically answered in part as follows:

"Defendants specifically allege that they did not know and had no reason to know, suspect or believe that plaintiff was susceptible to physical or mental harm, injury, damage or illness by means of verbal communications addressed to or conversations held with her and, as a reasonable man, had no reason, cause or basis to suspect or foresee that the alleged verbal communications addressed by defendants to plaintiff might cause injury or harm.

"Defendants specifically allege that they did not intend to cause any injury or harm to the plaintiff, either mental or physical, through the use of any of the alleged language.

"Defendants specifically deny that the alleged language was used by them with recklessness regard of the plaintiff's rights, safety, health or wellbeing or was used in reckless disregard of any adverse consequences to the plaintiff therefrom which were known or reasonably should have been known by defendants."

Plaintiff appeals.

Plaintiff sought money damages for mental anguish and other physical symptoms of such mental anguish caused by the acts of defendant, Larry Shaver, in making threatening and abusive phone calls to plaintiff concerning a debt owed by plaintiff's son. The case came on for trial before a jury on September 16, 1974. Upon plaintiff presenting the evidence of one witness and offering the evidence of two more, said evidence being dictated into the record and stipulated to by defendants in part as follows, to-wit: That the husband of plaintiff would testify that he observed the highly nervous condition of his wife; that she suffered from headaches; was unable to cook dinner and unable to sleep the night following the call from defendant

Shaver, and further, was unable to go to sleep every night thereafter for four or five or six nights; that Dr. Woodson's nurse on rebuttal would testify that Mrs. Bennett did tell her, when she came in, relating the history of the telephone calls that she received and particularly the last one from Mr. Shaver, as the reason why she was, as she put it, "as nervous as—a nervous wreck—," defendants interposed a demurrer to plaintiff's evidence grounded on failure to prove by expert medical testimony that plaintiff, as a result of defendant's acts, suffered mental anguish and other physical symptoms.

The trial court sustained defendant's demurrer in words as follows;

"BY THE COURT: The demurrer will be sustained; exceptions allowed Plaintiff, and as I said at the Pre-Trial Conference, absent evidence of objective symptomology supported by medical testimony showing such to have been caused as a non-contact injury to the Plaintiff in this case, the cause of action is not established."

Plaintiff alleges error as follows:

"An action for damages for mental anguish need not be accompanied by physical injury where the act was willful and in violation of plaintiff's legal rights."

The Supreme Court of Oklahoma recognized the above statement as early as 1941. In *Mashunkashey v. Mashunkashey*, 189 Okl. 501, 113 P.2d 190, it was stated that usually pain and suffering is compensable only when made an element of damage in an action based on a wrong which in itself is actionable, but mental pain and suffering may constitute the basis of an independent action in cases of willful wrong of the character where mental suffering is recognized as the ordinary, natural and proximate result of such wrong, although mental pain and suffering was not pleaded as an independent action but as an element of damage in an action for injury to character resulting from the bigamous marriage induced by the defendant. Nevertheless

the court said that mental pain and suffering constituted a ground of recovery and even if plaintiff failed to prove damage to her character, she could still show mental pain and suffering and recover therefor. There was no evidence or mention of physical injury. Defendant appealed on the grounds that in awarding damages, there was nothing of a tangible nature on which to base the pecuniary detriment suffered and that damages were based solely on allegations of injured reputation, mental suffering and humiliation. The court, despite these contentions, affirmed the award.

In a more recent case, this Court affirmed a judgment for damages in an action for intentional infliction of mental anguish by efforts of a seller to retake possession of a television set and held that damages were recoverable for mental suffering notwithstanding the absence of physical injury. *Reeves v. Melton*, 518 P. 2d 57 (Okla.App.1973). That part of the opinion dealing with physical injury concluded that injuries to the nervous system *were* physical and that recovery may be had therefor as for other physical injuries. *Sloane v. Southern California Railway Co.*, 111 Cal. 668, 44 P. 320, was relied on and heavily quoted in the opinion. Included was the following:

> "The interdependence of the mind and body is in many respects so close that it is impossible to distinguish their respective influence upon each other . . . The nerves and nerve centers of the body are a part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. If these nerves, or the entire nervous system, are thus affected, there is a physical injury thereby produced; and, if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect, through some action upon the mind."

It is a matter of general knowledge that severe emotional distress creates a change in the nervous system. Under the above court's decision, that in itself is enough to constitute a physical injury and objective physical injury is not required. Numerous other states also allow recovery for mental anguish absent such physical injury. To mention a few, in Oregon, it is settled that where the wrongful act constitutes an infringement of a legal right, mental suffering alone may be recovered for, if it is the proximate and natural result of the wrongful act. *Hinish v. Meier and Frank Co.*, 166 Or. 482, 113 P.2d 438 (Or.) (invasion of privacy). In *Aetna Life Ins. Co. v. Burton*, 104 Ind.App. 576, 12 N.E. 360, the Indiana Court said it has long been their rule that mental anguish need not necessarily be accompanied by physical injury where the act was willful or wrongful or was an unlawful act resulting in the invasion of the legal rights of another. See also *Skousen v. Nidy*, 90 Ariz. 215, 367 P. 2d 248; *Spiegel v. Evergreen Cemetery*, 117 N.J.L. 90, 186 A. 585; *Curnett v. Wolf*, 244 Iowa 683, 57 N.W.2d 915.

In the present case a series of phone calls were initiated by defendant, Larry Shaver, the first of which (according to plaintiff's testimony) was in late June or early July. Threats to ruin plaintiff's credit were made during one of the two calls made on October 9, 1973. Plaintiff testified the calls were lengthy and during the conversation defendant stated:

> "Mrs. Bennett, I will ruin your credit and his, and I will do everything in my power to do it."

When asked by plaintiff if that was a threat, defendant said:

> "Mrs. Bennett, you can take that any way you want to. You have a poor attitude, the poorest attitude that I have ever seen. I take it that you don't want to help this bank! Well, I will do everything I can to make you sorry that you took this course of action, and when I get through with you, you will look back in time and remember this day. I will do everything in my power to make your life miserable and make you pay for this."

As a result of this conversation, plaintiff testified she became "scared to death." Further that her husband worked for an hourly wage and that they had used credit to buy everthing they owned and that she was told by Norman Retail Credit that her credit was rated number one. She testified that she believed defendant could actually carry out his threats. Plaintiff further testified she was in a state of shock and fear, became highly nervous, had severe headaches for three or four days, was unable to sleep for several nights, and was worried a good deal for at least four to five weeks. The day following the telephone calls of October 9, 1973, plaintiff saw Dr. Woodson who testified she was nervous and had elevated blood pressure. Plaintiff was prescribed tranquilizers.

In *Hazlitt v. Fawcet Publications,* 116 F.Supp. 538 (D.C.Conn.1953), the Federal Court was called on to decide whether invasions of personal privacy was a tort under Oklahoma law, a question on which the Oklahoma courts had not passed, and decided the question in the affirmative based on Judge Vaught's suggestion that the right existed in *Paramount Pictures v. Leader Press,* 24 F.Supp. 1004, reversed on another point in 106 F.2d 229 (10th Cir. 1939).

Defendants in their answer brief argue that *Mashunkashey v. Mashunkashey,* supra, and *Reeves v. Melton,* supra, require that mental anguish be shown to be the result of a separate and independent actionable wrong.

Although we find no Oklahoma authority in point, recovery has been allowed elsewhere on facts somewhat similar to those involved in the instant case. In *Housh v. Peth,* 99 Ohio App. 485, 135 N.E.2d 440 (1955), an Ohio Court awarded damages for mental suffering unaccompanied by physical injury caused by defendant creditor's invasion of plaintiff's privacy by harassing phone calls in an effort to collect the debt. The court found that defendant had initiated a campaign of harassment by calling plaintiff every day both at work

and at home for three weeks and had called her employers, all resulting in an invasion of plaintiff's right of privacy for which she was allowed to recover for mental anguish which resulted.

In the case now under review the telephone calls were all the more disturbing because plaintiff was not the debtor from whom the Bank wished to collect nor was she secondarily liable on the debt. We hold defendant's intrusion into her home by use of the telephone, as revealed by the evidence in this case, was unwarranted, unreasonable, and constituted an invasion of her right to privacy and was therefore an actionable wrong. Assuming arguendo appellees' contention that a "single" telephone call would not afford appellant a cause of action in trespass or invasion of privacy, appellant's petition sufficiently alleges an action against appellees "for outrageous conduct." See American Law Institute Restatement of the Law, Torts 2d, p. 46 et seq.; *Zimmerman v. Associate Discount Corporation,* 444 S.W.2d 396 (Mo.).

Courts have recognized that the interest in freedom from severe emotional distress is regarded as of sufficient importance to require others to refrain from conduct intended to evoke it. See Law of Torts, William L. Prosser, 4th Ed., § 12; *George v. Jordan Marsh Co.,* 268 N.E.2d 915 (Mass.), 46 A.L.R.3d 762; *Curnett v. Wolf,* supra; *Rodrigues v. State,* 472 P.2d 509 (Hawaii 1970). The action can be based on spoken words alone. The important elements are that the act is intentional, that it is unreasonable, and that the actor should recognize it as likely to result in illness. Given these elements the modern cases recognize that mere words, oral or written, which result in injury to another are actionable. *Bowden v. Spiegel, Inc.,* 96 Cal.App.2d 734, 216 P.2d 571.

Malice is defined as the intentional doing of a wrongful act without justification or excuse. *Mangum Electric Co. v. Borden,* 101 Okl. 64, 222 P. 1002 (Okl.). Defendant Larry Shaver engaged in unprotected activity by using his position of

apparent ability to affect the plaintiff's interest from which he could reasonably expect extreme mental distress to result. The unprotected conduct was the making of threats to take action which defendant was not allowed by law to take. In *Carrigan v. Henderson,* 192 Okl. 254, 135 P.2d 330, cited by defendants, the court specifically pointed out that the defendant's threats to take steps for the collection of a debt were for the protection of legal rights based on statutes.

It is well established that a threat to do that which one has a legal right to do cannot be the basis of an action. *Peoples Finance & Thrift Co. v. Harwell,* 82 P.2d 994; *Kizziar v. Pierce,* 204 Okl. 51, 226 P.2d 941.

In the case now under review the evidence is undisputed that plaintiff did not owe the Bank anything, thus the threats were not made to enforce a legal obligation owed by plaintiff.

Plaintiff next complains as follows:

"If objective physical symptoms are required to sustain this action, plaintiff has met such requirement by testifying she suffered from nervousness and shock which are physical injuries."

In the specially concurring opinion in *Pacific Mut. Life Ins. Co. of Calif. v. Tetirick,* 185 Okl. 37, 89 P.2d 774, Justice Davison said:

"As I interpret the term 'contemporaneous physical injury' it may include such an injury as the plaintiff in the present case is alleged to have received. Partly responsible for this view is the recognition that a 'physical injury' may be an injury to the nervous system as well as an injury to the bones or muscles."

In *Kimberly v. Howland,* 143 N.C. 398, 55 S.E. 778, the court stated:

"We think the general principles of the law of torts support a right of action for physical injuries resulting from negligence, whether willful or otherwise, none the less strongly because the physi-cal injury consists of a wrecked nervous system instead of lacerated limbs."

And in *Sloane v. Southern California Railway Co.,* supra, it was said:

"It must be conceded that a nervous shock or paroxysm, or a disturbance of the nervous system, is distinct from mental anguish, and falls within the physiological, rather than the psychological, branch of the human organism."

More recent cases have continued to hold that disturbances of the nervous system caused by mental shock or fright are classified as physical injuries. *Alcorn v. Anbro Engineering Inc.,* 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216, and cases cited therein.

Plaintiff for her last contention, alleges as follows:

"Expert medical testimony is not required to show plaintiff's physical and mental condition was caused by defendant's acts."

■ Plaintiff testified she suffered from nervousness and shock and plaintiff's husband was ready to testify as to her condition before and after the telephone calls. It is generally held that if the result is known by the average individual no expert testimony is necessary. Before an expert's opinion is admissible, the situation must be one which is removed from the practical experience of jurors and opinions are not admissible when there is no necessity for admission of such evidence. *Skelton v. Sinclair Refining Co.,* 375 P.2d 948, quoting 32 C.J.S. Evidence § 445. Plaintiff in the instant case fits within this category.

■ Intentional infliction of mental anguish is an independent cause of action where mental suffering is recognized as the ordinary, natural and proximate result of such wrong.

Our language in *Reeves v. Melton,* supra, (and cases cited therein) supports this proposition by noting that it is a matter of general knowledge that an attack of a sudden fright, or an exposure to imminent peril, has produced in individuals a complete change in their nervous system, and

has rendered one who was physically strong and vigorous, weak and timid. If, from their own experience, jurors are aware of the extent and character of the disagreeable emotions that may result from the defendant's conduct, then such is a matter of general knowledge.

An argument similar to defendant's present position was raised in *Orthopedic Clinic v. Hanson,* 415 P.2d 991, in which defendant contested the physician's testimony that an ulcerated condition "could have" been caused by a burn. The court's answer was:

> "Assuming arguendo the validity of defendants' argument, the plaintiff's testimony as to the instantaneous onset of the ulcerated condition of her ankle following treatment with the medcolator, which treatment was accompanied by a burning sensation, coupled with the expert testimony of Dr. Morton that the ulcer *could* have been caused by such a burn would provide a sufficient basis for the jury's determination in this case. But we do not agree that expert testimony was required. In those casts where the cause of the injury is apparent without the aid of science and the injury is objective rather than subjective in nature, as in the instant case, testimony of a layman as to the manner in which the injury was sustained is sufficient, without expert testimony, to send this issue to the jury."

In *Galusca v. Dodd,* 189 Md. 666, 57 A. 2d 313, the police were allowed to testify plaintiff "was in a very nervous condition" because such observations, the court said, do not require medical training. In *Chicago City R. Co. v. Bundy,* 210 Ill. 39, 71 N. E. 28, it was proper for a witness to say that appellee was in a nervous condition even though he was not an expert. The court felt that the matter was one requiring no special skill or science to understand and the fact could be testified to by anyone who knew it.

As for the damages for purely mental suffering, plaintiff argues that a physician's testimony is not necessary. Although no Oklahoma court has specifically discussed the issue, it is pointed out that no medical testimony was apparent in either *Reeves v. Melton,* supra, or *Mashunkashey v. Mashunkashey,* supra. To hold otherwise would deny recovery in many cases of intentional infliction of mental anguish. If the question was whether mental anguish caused physical injury, this argument would not lie and medical testimony would be required. For example, in *State Rubbish Collectors Assn. v. Siliqnoff,* 38 Cal.2d 330, 240 P.2d 282 (Cal.), the court said:

> "From their own experience jurors are aware of the extent and character of the disagreeable emotions that may result from the defendant's conduct, *but a difficult medical question is presented when it must be determined if emotional distress resulted in physical injury.*" (Emphasis theirs.)

On the basis of the above it is clear that a medical issue is not present where damage for mental anguish alone is present. The jury is capable of deciding the issue. The above case goes on to say:

> "Greater proof that mental suffering occurred is found in the defendant's conduct designed to bring it about than in physical injury that may or may not have resulted therefrom."

From a thorough review of the record, we hold that the trial court committed reversible error in sustaining defendants' demurrer. We therefore reverse the action of the trial court with instructions to reinstate plaintiff's cause and proceed not inconsistent with the views herein expressed.

REVERSED AND REMANDED WITH INSTRUCTIONS.

ROMANG, P. J., concurs.

REYNOLDS, J., dissents.

### ORDER

Motion for rehearing granted. Opinion of September 23, 1975 withdrawn and superseded by opinion of December 16, 1975.