## Tomlin v. Taylor et al.

May 12, 1942.

620

Stephens L. Blakely and D. Bernard Coughlin for appellant.

B. S. Grannis and W. G. Kenton for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This is one of eight suits filed against the appellees, Hiram M. Taylor and James Purdon, and Harry Ort by the appellant, Roy Tomlin, and A. B. Rouse, F. W. Dempsey and the Maysville Transit Company. Damages in the sum of $50,000 are sought in each case. While the petitions are said to be the same in all the actions, this case involves only the suit of Tomlin against Taylor and Purdon. A demurrer was sustained to Tomlin's petition as amended; hence the only question before us is whether or not the petition stated a cause of action.

The Maysville Transit Company, of which Tomlin is president, began operating a bus service in Maysville late in 1936 under a five-year franchise. During the latter part of 1939, the company sought to have its franchise renewed. At about this time controversies arose between the company and the city commissioners as to the character of service being rendered by the company. The appellee, Hiram M. Taylor, is not a city official, but we gather from his brief and the record that he was a member of an advisory committee appointed by the

mayor to advise the Board of Commissioners on public matters, and regularly attended the board's meetings while the bus controversy was under way. The Board of Commissioners took appropriate steps to obtain from the State Department of Revenue copies of the tax reports filed by the Bus Company under Section 4077 of the Statutes. This information was obtained under Section 4114h-15 of the Statutes Supp. 1939. As this controversy hinges, to a considerable extent, on this statute, it is necessary that we quote it in full:

"§ 4114h-15. It shall be unlawful for any present or former commissioner or employee of the Department, member of county board of supervisors, county tax commissioner or employee thereof or any other person, whether enumerated herein or not, to divulge any information acquired by him of the affairs of any person or information regarding the tax schedules, returns or reports required to be filed with the Department or other proper officer or any information produced by a hearing or investigation insofar as the same may have to do with the affairs of the individual business; provided, however, that this prohibition shall not extend to information required in prosecutions for making false reports or returns of property for taxation or any other infraction of the tax laws of the State; provided, further, that this prohibition shall not extend to any matter properly entered upon any assessment book, roll or record, or otherwise in any way made a matter of public record; nor shall it preclude furnishing any taxpayer or his properly authorized agent information respecting his own return; and provided further that the Commissioner shall make available any data or information for official use only to the proper officer, board or commission of this State, any Kentucky city, any other state or province, or the Federal Government, and make available any data or information in its possession or coming to its knowledge to any such officer, board or commission on a confidential basis, and under reciprocal arrangements whereby the Department shall receive similar or useful information from such officer or body. Any violation of the provisions of this section shall be a misdemeanor and shall be punished by a fine not exceeding five hundred dollars ($500.00) or by imprisonment not exceeding six months, or both,

and the guilty person shall be disqualified and removed from office or employment.''

Doubtless because of Taylor's regular attendance at the Board's meetings, by virtue of his membership on the advisory committee, copies of the company's tax reports came into his possession. On March 15, 1940, he addressed a communication to the Daily Independent, a newspaper owned and operated in Maysville by the other appellee, James Purdon, wherein he reviewed at some length the controversy between the board and the company, and wherein he said:

"So as not to do the Bus Company an injustice I will quote from statements filed by the Company with the Department of Revenue at Frankfort. * * *''

The statements referred to were the copies of the company's tax reports and Taylor's letters set forth the figures as to its operations for the years 1937 and 1938, and also the adjustments made by the Department of Revenue. The letter also contained this statement setting forth Taylor's opinion relative to the company's original report:

"Now For The Joker—The Bus Company in determining the Net Income reported officers' salaries of $7,500 for each year. The salaries paid the first year, and return on investment amount to considerably more than the original investment. This does not include drivers' wages, but the Department of Revenue ruled the above salaries as excessive. * * *''

Taylor also expressed his views as to what he considered a fair return for the company. This letter was published in the Daily Independent. On the following May 3rd, Taylor addressed another letter to the editor of the Daily Independent which was published in that paper. The second letter referred to the disputes as to certain routes and schedules, but reference was made again to the Bus Company's tax reports in these terms:

"It has been shown on the profit and loss statement furnished by the Department of Revenue that the Bus Company has had an annual revenue over a two year period of between thirty and thirty-five per cent on their investment, and no attempt has been made by the Bus Company to refute this report. * * *''

The foregoing letters constitute the basis of Tomlin's action against Taylor and Purdon. In substance the amended petition sets forth: Tomlin has been a resident of Maysville for many years, where he enjoys the good will, esteem and confidence of his fellow citizens; his connection with the Bus Company and its efforts to furnish satisfactory service to the citizens of Maysville; Section 4114h-15 makes it unlawful for any person to divulge information concerning tax schedules filed by franchise paying corporations under Section 4077 of the Statutes, except for official use only; Taylor and Purdon unlawfully, deliberately and maliciously undertook to deprive him of his employment and property, and to injure, damage and destroy the company's business and take away from him the good will he enjoyed among his fellow citizens; Purdon and Taylor wrongfully, maliciously and wantonly disseminated and published the confidential information at divers times and to divers persons, giving it wide publicity; Taylor wrote the letters setting forth the confidential information and Purdon published them in his paper; and the letters contained false and misleading statements and inferences relative to him and to his business.

Tomlin earnestly insists that the actions of the appellees constituted a violation of Section 4114h-15 of the Statutes, and that they are liable therefor under Section 466 of the Statutes. This latter section reads:

"A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

The appellees contend, however, that Section 4114h-15 relates only to officers and employees having to do with the handling and keeping of tax records and places upon them a penalty for divulging information contained in the records.

No one can read Section 4114h-15 of the Statutes without becoming convinced that the Legislature intended that tax schedules, returns or reports filed with the Department of Revenue should be treated and handled in a confidential manner. It is obvious, therefore, that there has been a violation of this statute insofar as the tax returns of the Bus Company are concerned.

But the question immediately before us is, Did Taylor and Purdon violate the statute? Regardless of how reprehensible their conduct may have been in publicizing the confidential information contained in the Bus Company's tax reports, we are forced to the conclusion that they did not violate the statute. A careful analysis of it leads to the conclusion that it was the intention of the Legislature to make it unlawful for an officer or an employee of the Department of Revenue, a member of a county board of supervisors, or a county tax commissioner, and also officials who obtained such information as provided in the statute, to divulge information obtained from tax schedules. We have noted that copies of the Bus Company's tax returns were obtained by city officials of Maysville in a proper manner, but it is obvious that they did not use the information as directed by the statute because it clearly provides that such information shall be made available for official use only and shall be treated on a confidential basis. The last sentence of the statute under consideration fortifies our view of it. This sentence directs that any violation of the statute shall be a misdemeanor and shall be punished by a fine not exceeding $500 or imprisonment not exceeding six months, or both, and also that the guilty person shall be disqualified and removed from office or employment. This shows clearly that it was the intention of the Legislature to make the statute relate to tax officials and employees handling tax schedules, returns or reports, and other officials who obtained such information as provided by the statute. Since Taylor and Purdon were not officials, it must be concluded that they did not violate the statute by publicizing information obtained from the Bus Company's tax reports. It follows, therefore, that Tomlin did not have a cause of action against them under Section 466 of the Statutes.

It is next urged that the appellees invaded Tomlin's right of privacy. This Court has long held that one who invades a person's right of privacy must answer for his wrongdoing. Brents v. Morgan, 221 Ky. 765, 299 S. W. 967, 55 A. L. R. 964; Rhodes v. Graham, 238 Ky. 225, 37 S. W. (2d) 46; Trammell v. Citizens News Co., Inc., 285 Ky. 529, 148 S. W. (2d) 708, and cases cited therein. But the question is, Wherein have the appellees invaded Tomlin's right of privacy? He was the principal officer and manager of the Bus Company, a public service corporation, and we have noted that there were bona fide

disputes between the company and the city officials as to the franchise renewal and the character of service being rendered by the company. It was only natural that repercussions of these disputes would find their way into the press. Furthermore, Taylor's letters were not directed toward Tomlin, personally, but rather to the company in its management and operation. We must not overlook the fact that we are not confronted with the question of the publication of information obtained from Tomlin's tax reports, but rather from those of the Bus Company. As we have indicated, one can not read Section 4114h-15 of the Statutes without reaching the conclusion that the Legislature intended that the information furnished the Department of Revenue in tax schedules, returns or reports should be treated in a confidential manner. It may be conceded that this statute created a special and particular right of privacy, but it does not follow that the officer of a corporation making such a return may assert the right. It is our conclusion, therefore, that the actions of the appellees did not constitute an invasion of Tomlin's right of privacy. Therefore, the action of the trial court in sustaining the demurrer to the petition as amended is affirmed.

Whole Court sitting, except Judge Rees.