**HAZLITT**

v.

**FAWCETT PUBLICATIONS, Inc.**

**Civ. A. No. 3685.**

United States District Court
D. Connecticut.

Nov. 4, 1953.

Charles R. Covert, Bridgeport, Conn., Halford W. Park, Jr., Orson L. St. John, Greenwich, Conn., for plaintiff.

Cummings & Lockwood, Stamford, Conn., for defendant.

HINCKS, Chief Judge.

This action was originally based upon a claimed libel in a story published in the May 1950 issue of defendant's magazine "Startling Detective." The plaintiff, a citizen of Oklahoma, brought his action to the Superior Court for Fairfield County on February 29, 1952, and the defendant, a Connecticut Corporation removed the case to this court. The complaint now contains two counts, this court having on January 19, 1953, granted plaintiff's motion to add the second count. Defendant answered the first count, which is for libel, and has moved for summary judgment on its second affirmative defense, the statute of limitations. Defendant also has moved, prior to answer, to dismiss the second count, which alleges invasion of plaintiff's right of privacy. The record referable to the first count contains three lengthy sets of in-terrogatories to defendant, the deposition of the plaintiff, and a number of affidavits. I shall discuss each count separately.

### First Count

The first count states a claim for libel based on a multi-state publication. As in Dale System, Inc. v. Time, Inc., D.C.Conn., 116 F.Supp. 527 and in Fouts v. Fawcett Publications, Inc., D.C. Conn., 116 F.Supp. 535. I hold that a Connecticut court in such a case as this would look to the law of plaintiff's domicile which, in this case, is Oklahoma, for definition of the applicable law. And finding no judicial or statutory announcements of the law of Oklahoma on the point, I apply the reasoning used in Dale System, Inc. v. Time, Inc., supra, and Fouts v. Fawcett Publications, Inc., supra, and hold that in the contemporary scene a court of Oklahoma, if confronted with these problems, would apply the law of Oklahoma, the plaintiff's domicile, and would adopt the modern single-publication rule with the test of accrual stated in the leading case of Gregoire v. G. P. Putnam's Sons, 298 N.Y. 119, 81 N.E.2d 45.

Such being the applicable law, the relevant facts are as follows: There was one printing, totalling 327,958 copies, of the May, 1950, issue of "Startling Detective" (hereinafter referred to as "the magazine"). This printing was completed and the last copy ready for distribution by February 4, 1950. Shipment of the magazine to wholesale distributors and mailing to subscribers was completed by February 17, 1950 (except for replacement of damaged or lost copies). The "scheduled release date" for this May issue was February 24, 1950, and on this date the magazine went on sale at news-stands nationally. The "off-sale" date of the magazine was April 28, 1950. Until the off-sale date wholesale distributors, under contract with defendant, were required to push sales and to re-supply dealers who had sold out. On February 18, 1950, there remained in defendant's possession 3,400 copies of the May, 1950, issue. Plaintiff's Second

Additional Interrogatory 14 asked whether defendant shipped additional copies of the magazine after February 17, 1950, to resupply dealers who had sold out prior to the next publication date. In answer, defendant stated that some of these 3,400 copies were distributed subsequently to replace copies lost or damaged in the initial distribution. This answer is equivocal, and therefore I for purposes of the present motions assume the answer to be "yes". The assumption is borne out by the following reasoning by plaintiff. The total audited circulation in the United States and Canada was 326,205; 324,558 copies including 1090 copies apparently not circulated in the United States or Canada, were shipped prior to February 18, 1950. Therefore some 2,737 copies included in the audit were shipped after February 17, 1950. It being unlikely that both damaged and replacement copies would be included in the audit, plaintiff concludes that the 2,737 copies must have been distributed by defendant after February 17, 1950.

■ Even accepting the above reasoning, which contains some questionable assumptions, a finding would be required that there was but a single publication of the magazine and that it occurred on February 24, 1950, at the latest. Dale System, Inc., v. Time, Inc., supra; Fouts v. Fawcett Publications, Inc., supra. Assuming that defendant distributed 2,738 copies even after February 28, this would amount to but 0.8% of the entire printing. Clearly this amount would be insignificant dribble after the initial impact. The courts applying the single publication rule have uniformly held that such incidental distribution will not retard the accrual of the cause of action. Gregoire v. G. P. Putnam's Sons, supra; Means v. MacFadden Publications, D.C.S.D.N.Y.1939, 25 F.Supp. 993, 995; Winrod v. Time, Inc., 334 Ill.App. 59, 78 N.E. 2d 708, 710, leave to appeal denied, 1948, 336 Ill.App. XIV; Cannon v. Time, Inc., D.C.S.D.N.Y.1939, 39 F.Supp. 660, 661; Backus v. Look, Inc., D.C.1941, 39 F. Supp. 662, 663; McGlue v. Weekly Pub-

lications, D.C.Mass.1946, 63 F.Supp. 744; Polchlopek v. American News Co., D.C. Mass.1947, 73 F.Supp. 309, 310. In this case, as in Fouts v. Fawcett Publications, Inc., supra, there is no basis for a finding of a later republication.

Turning now to correlate this finding with the applicable Connecticut Statute of Limitations, I note that at the time of the allegedly libelous publication plaintiff had three years within which to commence an action for libel. Section 8316, Conn.Gen.Stats., 1949. About a year and three months later, on June 6, 1951, a bill shortening the time for the limitation of defamation actions to two years was passed by the Connecticut legislature. It was signed by the Governor on July 9, 1951. Pursuant to the general provisions of Section 8891, Conn.Gen. Stats., 1949, the act became effective on October 1, 1951. That act now appears as Section 1394b of the 1951 Supplement to the Connecticut General Statutes. Plaintiff brought this action within the three-year period of the statute originally applicable but some five months after the effective date of the new statute, and four days after the two-year period had run. Thus two problems are presented: (1) Was the new statute intended to have retroactive effect on existing claims not yet sued on, and (2) if so, is it invalid as to such claims because a reasonable time was not allowed within which to bring suit on existing claims?

■ As to the first point, I think there is little doubt that the Connecticut Statute of 1951 was intended to have retroactive effect. Fitzgerald v. Scovil Mfg. Co., 77 Conn. 528, 60 A. 132; Kennedy v. Johns-Manville Sales Corp., 135 Conn. 176, 62 A.2d 771. I so hold. In this connection it is perhaps worth noting that in Toletti v. Bidizcki, 118 Conn. 531, 173 A. 223, a Connecticut court interpreted a statute making a procedural change only to have retroactive effect even as to a pending action actually in court when the statute became effective. ■ Whether the statute, interpreted to have a retroactive effect, was constitutional, is a closer question. In Fitzgerald

v. Scovil Mfg. Co., supra [77 Conn. 528, 60 A. 133], the court appeared to take as the applicable test the fact that in that particular case, "a reasonable time, taking all the circumstances into consideration, was given for the commencement of suit before the bar took effect." And that question was treated as a question of law for the court. See also Chase Securities Corp. v. Donaldson, 325 U.S. 304, 317, 65 S.Ct. 1137, 89 L.Ed. 1628; Conwell v. Central Mo. Tel. Co., D.C.W.D. Mo.1948, 76 F.Supp. 398.

In the Fitzgerald case the limitation carried by the new statute was such that the plaintiff had six months in which to bring suit after the bar of the new statute became effective. Here, since the action accrued on or before February 24, 1950, the new statute left the plaintiff but four months for institution of suit before its bar became effective. However, the Fitzgerald opinion in deciding the question of reasonable time appears to have taken into account the time intervening after the enactment of the new statute and before its effective date; in that case the statute had been enacted eighteen months before its effective date and indeed ante-dated the accrual of the plaintiff's claim. Here the new statute was enacted about sixteen months after plaintiff's claim accrued, but only about three months before its effective date, and about seven months before this particular count would be thereby barred. Thus it is plain that, on the issue of reasonable time, the case here is stronger for the plaintiff than the Fitzgerald case.

It should be noted that the prevailing rule elsewhere treats as controlling the reasonableness of time between the passage of the statute and its effective date. Mulvey v. City of Boston, 1908, 197 Mass. 178, 83 N.E. 402; Steele v. Gann, 1939, 197 Ark. 480, 123 S.W.2d 520, 120 A.L.R. 754; Kozisek v. Brigham, 1926, 169 Minn. 57, 210 N.W. 622, 49 A.L.R. 1260; Reid v. Solar Corp., D.C.Iowa 1946, 69 F. Supp. 626, 637. Under this test the critical period in this case was only three months (less nine days). As

pointed out above, it is not wholly clear from the Fitzgerald opinion whether Connecticut treats the critical period as so limited, or as extended by the time which it left for the particular plaintiff to bring suit which here, as we have seen, was about seven months. But even if under the authentic Connecticut rule the critical period here involved is as short as two months and twenty-one days, it should be noted that a statute leaving to plaintiffs an even shorter period was upheld in Mulvey v. City of Boston, supra, and that statutes leaving three months for suit were upheld in Kozisek v. Brigham, supra, and Steele v. Gann, supra. In fairness, however, it will be noted that there are a number of cases in other jurisdictions which have stricken down statutes leaving even longer periods for suit. Central Mo. Tel. Co. v. Conwell, 8 Cir., 170 F.2d 641. And see generally 120 A.L.R. 754 and 49 A.L.R. 1260.

In this situation I think it unnecessary to decide which variation of the applicable rule a Connecticut court would adopt. Even if under the true Connecticut rule the critical period is deemed to have terminated with the effective date of the statute and so was as short as two months and twenty-one days, I think I should not treat the statute as lacking in vitality. The ruling, I think, is required by the reasoning in Mulvey v. City of Boston, Steele v. Gann, Kozisek v. Brigham, all cited above, and by Terry v. Anderson, 95 U.S. 628, 24 L.Ed. 365.

I hold, therefore, that the motion for summary judgment on the first count should be granted.

### Second Count

■ By the second count the plaintiff claims damages for violation of his claimed right of privacy. His claim is based upon the same story in "Startling Detective" which was involved in the first count. Since a multi-state publication is thus involved, I hold that the Connecticut courts and the Oklahoma courts would apply to this count the same conflict of laws rule which I found applicable

to the first count. Indeed, that rule is even more appropriate to this count than to the first. For in defamation cases the injury involved affects the plaintiff's reputation which may be conceived of as having a situs wherever the plaintiff is known. But the essence of invasion to a right of privacy is mental distress caused to the plaintiff which may best be considered as located at his domicile.

Defendant has moved to dismiss this count for failure to state a claim upon which relief may be granted, because (1) the Connecticut statute of limitations bars the action; (2) a cause of action for invasion of privacy is not stated; (3) even if an invasion of privacy not barred by the statute of limitations is stated, it is not actionable in this court because the right is not recognized in Oklahoma, plaintiff's domicile.

Although based on the same publication, the operative facts on which the claimed torts of libel and invasion of privacy depend, although having much in common, are not identical. It has been held in this circuit that the facts requisite to the two claims are sufficiently distinct to allow appealability under old Federal Rule 54(b), 28 U.S.C.A. Sidis v. F-R Pub. Corp., 2 Cir., 113 F.2d 806, 138 A.L.R. 15.

I hold now that the two torts are subject to different statutes of limitation. The general tort statute of limitations in Connecticut allows three years within which to bring suit. Gen.Stats. Conn.1949, § 8316. Only where another specific statute controls can there be a different period. Defendant claims that the new libel statute, Section 1394b, 1951 Supp. to the Gen.Stats., discussed in the first part of this opinion, covers privacy actions as well. It reads: "No action for libel or slander shall be brought but within two years from the date of the act complained of." The statute is too plain to leave room for claim that it was intended to apply to torts other than libel and slander.

Accordingly, the first ground of the motion is overruled.

I turn next to consider whether invasions of personal privacy is a tort cognizable under the law of Oklahoma. It is a question upon which the courts of that State have not passed. However, since the right was first suggested in the famous Warren and Brandeis article, 4 Harv.L.Rev. 193 (1890), the industry of plaintiff's counsel enables me to state that 22 American states have recognized the right as part of their common law[1]. Three other states, New York,

---

1. California. Melvin v. Reid, 1931, 112 Cal.App. 285, 297 P. 91; Kerby v. Hal Roach Studios, 1942, 53 Cal.App.2d 207, 127 P.2d 577.

District of Columbia. Peay v. Curtis Pub. Co., D.C.D.C., 1948, 78 F.Supp. 305.

Georgia. Pavesich v. New England Mutual Life Insurance Co., 1905, 122 Ga. 190, 52 S.E. 68, 69 L.R.A. 101.

Kansas. Kunz v. Allen, 1918, 102 Kan. 883, 172 P. 532, L.R.A.1918D, 1151.

Kentucky. Brents v. Morgan, 1927, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964; Tomlin v. Taylor, 1942, 290 Ky. 619, 162 S.W.2d 210.

Louisiana. Itzkovitch v. Whitaker, 1905, 115 La. 479, 39 So. 499, 1 L.R.A., N.S., 1147, affirmed on rehearing, 1906, 117 La. 708, 42 So. 228.

Missouri. Barber v. Time, Inc., 1942, 348 Mo. 1199, 159 S.W.2d 291.

New Jersey. Frey v. Dixon, 1948, 141 N.J.Eq. 481, 58 A.2d 86.

North Carolina. Flake v. Greensboro News Co., 1938, 212 N.C. 780, 195 S.E. 55.

Pennsylvania. Leverton v. Curtis Pub. Co., 3 Cir., 1951, 192 F.2d 974.

Decisions Since 1940.

Alabama. Smith v. Doss, 1948, 251 Ala. 250, 37 So.2d 18.

Arizona. Reed v. Real Detective Publishing Co., 1945, 63 Ariz. 294, 162 P.2d 133.

Florida. Cason v. Baskin, 1944, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430.

Illinois. Eick v. Perk Dog Food Co., 1952, 347 Ill.App. 293, 106 N.E.2d 742.

Indiana. Continental Optical Co. v. Reed, 1949, 119 Ind.App. 643, 86 N.E.2d 306, 14 A.L.R.2d 743, rehearing denied 119 Ind.App. 653, 88 N.E.2d 55, 14 A.L.R.2d 750.

Michigan. Pallas v. Crowley, Milner & Co., 1948, 322 Mich. 411, 33 N.W.2d 911.

Montana. Welsh v. Pritchard, 1952, 125 Mont. 517, 241 P.2d 816.

Utah and Virginia, have adopted the right to modified extent by statute. 39 Mich.L.Rev. 526 (1941). In only three states has the right been expressly denied.[2] Four more states have treated the question as open.[3] Of the three states in which the existence of the right was denied, one (New York) immediately adopted the right in modified form by statute.

█ In recent years this trend has been especially pronounced. Law Review support is practically unanimous. Since 1936, no court in any state has denied the right and in both New Jersey, McGovern v. Van Riper, 1945, 137 N.J.Eq. 24, 43 A.2d 514, and Missouri, Barber v. Time, Inc., 348 Mo. 1199, 159 S.W.2d 291, the courts have abandoned their outmoded property basis for recognition of the right on an independent basis. See Feinberg, Recent Developments in the Law of Privacy, 48 Col.L.Rev. 713 (1948). As recently as 1952, Illinois and Montana adopted the right by express holding, and with no misgivings [1]. In 1938, Judge Vaught, in the U. S. District Court for the Western District of Oklahoma, seemed to suggest that the right existed under Oklahoma law even though not involved in the case under discussion. Paramount Pictures v. Leader Press, D. C., 24 F.Supp. 1004, reversed on another point in 10 Cir., 106 F.2d 229. I have little hesitation in holding that the courts of Oklahoma will do the same when confronted with the question and that now the right exists, though still unannounced, in the common law of that State. I hold, therefore, that the third ground of the motion should be overruled.

The second ground of motion raises the question whether the second count states a claim for violation of the right of privacy which is not barred by the two-year Statute of Limitations applicable to libel cases. The question requires further statement of the content of the count and the published story of which the entire text has been incorporated by reference. The story relates that in August 1949 the plaintiff, who by occupation was a stunt auto driver, while participating in a travelling circus, killed a man, attempted to conceal his responsibility for the death, but notwithstanding was "detected", tried and convicted of second degree murder in that same month. The count in paragraphs 4–10 alleges facts from which the only inferences are that the plaintiff, with human provocation, struck the victim, thus unintentionally causing his death, and made no attempt to conceal his responsibility. It alleges further that the plaintiff was tried on a murder charge and on February 19, 1948 was found "not guilty". It also alleges generally that the story as published by the defendant, the entire text of which it incorporated by reference, was a "fictionalized version" of the fracas in question. Thus indirectly, but unequivocally, the count alleges that the story was false.

It is plain that the count as stated shows a claim for libel. From my earlier

Ohio. Friedman v. Cincinnati Local Joint Exec. Bd., etc., 1941, 6 Ohio Supp. 276, 20 Ohio 473.

Oregon. Hinish v. Meier & Frank Co., 1941, 166 Or. 482, 113 P.2d 438, 138 A.L.R. 1.

Nevada. Norman v. City of Las Vegas, 1947, 64 Nev. 38, 177 P.2d 442, 446.

South Carolina. Holloman v. Life Insurance Co. of Va., 1940, 192 S.C. 454, 7 S.E.2d 169, 171, 127 A.L.R. 110.

Texas. U. S. Life Ins. Co. v. Hamilton, 1951, Tex.Civ.App., 238 S.W.2d 289, 292.

2. Roberson v. Rochester Folding Box Co., 1902, 171 N.Y. 538, 64 N.E. 442, 59 L. R.A. 478.

Henry v. Cherry & Webb, 1909, 30 R.I. 13, 73 A. 97, 24 L.R.A.,N.S., 991.

Judevine v. Benzies Montanye Fuel & Warehouse Co., 1936, 222 Wis. 512, 269 N.W. 295, 106 A.L.R. 1443.

3. Connecticut. Urban v. Hartford Gas Co., 1952, 139 Conn. 301, 93 A.2d 292; O'Connell v. Hartford Times, Inc., 1947, 15 Conn.Supp. 85.

Massachusetts. Kelley v. Post Pub. Co., 1951, 327 Mass. 275, 98 N.E.2d 286.

Minnesota. Berg v. Minneapolis Star & Tribune Co., D.C.Minn.1948, 79 F.Supp. 957.

Washington, Lewis v. Physicians, etc., Bureau, 1947, 27 Wash.2d 267, 177 P.2d 896.

See also Elmhurst v. Pearson, 80 U.S. App.D.C. 372, 153 F.2d 467.

1. See Note 1 on page 542.

ruling it follows that it is barred by the two-year Statute of Limitations unless it also states a cognizable claim not constituting the tort of libel. To meet this hurdle, the plaintiff suggests that the court should filter out of the story all the libelous material and take the count as limited to so much of the story as remains. Thus, on brief he says:

"In any event, certain facts in the article complained of were true notably that the plaintiff was an American auto stunt driver named Jimmy Hazlitt who caused the death of one Doiron at Causapscal, Canada, in August, 1947, for which he was indicted for murder at Rimouski, Canada, and tried in Quebec. For the publication of these statements, the plaintiff can recover only in an action based on invasion of privacy. As shown in Point I, these statements alone are sufficient to injure the plaintiff, and were not a publication made in the public interest because they were stale and coupled with fictionalized material."

As to this, I observe, first, that in no event would the above facts suffice to state a claim for invasion of privacy without an allegation that the publication of these bare facts hurt the plaintiff's mental sensibilities. Such an allegation is essential to every action for the invasion of privacy. The right is not one that entitles a person to recover damages as a windfall in the absence of resulting hurt to his sensibilities. Prosser on Torts, Sec. 11, see particularly page 63. Indeed, the chief argument for recognition of the right of privacy in the Warren-Brandeis article in 4 Harvard Law Review 193, which did so much to stimulate the development of the law in this field, was based upon the need for a remedy to hurt feelings.

However, on the assumption that this plaintiff, who courts publicity for his professional performances, can honestly allege that his mental sensibilities were seriously hurt by the non-libelous facts which the plaintiff suggests may be winnowed out of the story, I will examine the merit of plaintiff's contention that the count, even when limited as suggested, shows an actionable, but non-libelous claim. The task, though formidable, cannot be avoided because unless the plaintiff's position can be sustained an unconditional dismissal will be in order.

To determine whether under Oklahoma law a count of such content states a claim for wrongful invasion of the plaintiff's privacy, in the absence of definitive Oklahoma cases I must assume that the law of Oklahoma is in substantial accord with the law of other jurisdictions in which the right of privacy has been judicially recognized, and that on points as to which the judicial pronouncements are obscure and conflicting the Oklahoma courts will follow what seems to be the better reasoned opinions. Leverton v. Curtis Pub. Co., 3 Cir., 192 F.2d 974. In this task I have found it helpful to give consideration to the analysis contained in Mr. Feinberg's article in the Columbia Law Review, Vol. 48, page 713 (1948).

The story, when limited, as plaintiff suggests it may be, discloses an episode in plaintiff's life history. The plaintiff, to be sure, by reason of his occupation as a stunt driver seeking paid public attendance at his exhibitions, was a "public figure" as that concept has been developed in this field. Sidis v. F-R Pub. Corp., supra. As such a figure certainly he had no right to object to news accounts, fairly reported, of his professional performances, or fair comment thereon, whether the facts thus reported were flattering to his ego or otherwise helpful to his box office appeal, or the contrary. Nor, I think, could he object to publications of such accounts and comment at subsequent stages in his career. That is so, I think, because the interest of the public (or a substantial segment thereof) in sports events is as legitimate as it is real. So highly personal is the interest of the public in "public figures" that I doubt that it is actionable to publish fair reports of incidents in a private life not directly related to the qualities or achievements upon which the status of a public figure depends. And so here, it might not have been actionable to pub-

lish, even two years after the fact, a factual account of the plaintiff's involvement in a homicide and of his resulting trial, in view of his alleged occupation as a public exhibitionist in the sports field of stunt driving not only at the time of the incident but also thereafter, as Par. 16 shows, until after the date of the publication. Such a publication might be deemed to be of legitimate public interest for the information it carried about an incident in the private life of a public figure. Sidis v. F-R Pub. Corp., supra.

Indeed, even if the plaintiff here were not deemed a public figure by occupation, his involuntary catapult to temporary notoriety because of involvement in a homicide left him without right to object to fair news accounts of the homicide and of his arrest and trial and without right to object to mention of his occupation in that connection. Elmhurst v. Pearson, 80 U.S.App.D.C. 372, 153 F.2d 467. Perhaps, also, later accounts containing information relating to criminal history or administration of interest either to a lay or professional public would not have been actionable.

■ But the story here involved, even if purged of libelous material, contains support—indeed highly plausible support —for plaintiff's allegation that the story was fictionalized. If so much of the story as is relied on was fictionalized and dramatized, I may not now rule, as a matter of law, that it was of legitimate public interest because informational and on that account not actionable. Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430; Garner v. Triangle Publications, D.C., 97 F.Supp. 546. The existence of fictionalization also lays foundation for plaintiff's claim that it was an appropriation of an episode of the plaintiff's life to the defendant's use for commercial purposes. Levey v. Warner Bros. Pictures, D.C., 57 F.Supp. 40; Feinberg, op. cit. For, to the extent that the defendant indulged in fictionalization, the inference gathers strength that the dominant characteristic of the story was not genuine information but fictional readability conducive to increased circulation

for the magazine. Sarat Lahiri v. Daily Mirror, 162 Misc. 776, 295 N.Y.S. 382. Thus this count may be deemed to state an actionable claim on the theory that the published story was in essence not a vehicle of information but rather a device to facilitate commercial exploitation. Maloney v. Boy Comics Publishers, Inc., 188 Misc. 450, 65 N.Y.S.2d 173; Reed v. Real Detective Pub. Co., 63 Ariz. 294, 162 P.2d 133; Mau v. Rio Grande Oil, Inc., D.C., 28 F.Supp. 845; Melvin v. Reid, 112 Cal.App. 285, 297 P. 91. And this conclusion is further strengthened by the two-year time lag between the criminal trial and the publication. Cf. Mau v. Rio Grande Oil, Inc., supra; Restat. Torts, Sec. 867, comment C.

I hold, therefore, that the second count should not now be unconditionally dismissed.

■ The rulings thus far indicated, leave the case in an amorphous state. I cannot now treat the paragraph quoted above from the plaintiff's brief as a binding definition of the basis of the plaintiff's claim. In the usual situation of a claim supportable on one of two possible technical causes of action, a motion to dismiss would be denied if the claim were found to be a sufficient statement of one cause of action. But this is not the usual situation. The second count was added by amendment after the defense of the Statute of Limitations had been pleaded to the first count which sounded in libel. Patently, it was an attempt to state a claim not barred by that statute. Yet, notwithstanding, the claim was stated so broadly that its chief emphasis is on libel. If the count in its present form were to get to the jury, the result well might be that, notwithstanding care in the charge, the plaintiff would have all the benefits of a claim for libel although such a claim is barred. In such a situation, I rule that the primary burden is on the plaintiff to filter out of the count the matter which is material only to a claim for libel and state a claim which will not leave it to opposing counsel or to the court to guess as to what he relies upon for an actionable but non-libelous claim.

I rule, therefore, that the motion to dismiss the second count should be granted with leave, however, to the plaintiff to amend. I suggest that if the plaintiff elects to amend, it do so by filing a substituted complaint counting only on its claim for invasion of privacy, there being no need to include therein the first count which, under my ruling as indicated above, is ready for judgment.

In restating the second count, the plaintiff will of course have in mind the need, noted above, to state such hurt to the plaintiff as is claimed to be the subject-matter of recovery for wrongful invasion of privacy. A general allegation that so much of the story as plaintiff relies on was fictionalized will be proper and appropriate. And of course the rulings above indicated, which were predicated on what the plaintiff *might* claim as the cause of hurt, will not have a binding effect on what he *does* claim in a restated count.

It is accordingly ordered that the motion for summary judgment on the first count be granted, and that the motion to dismiss the second count be granted with leave to the plaintiff to amend. Unless the plaintiff shall file a substituted or amended count within twenty days, the Clerk will enter judgment dismissing the case.